**SEALE, Appellant,**

v.

**CITY OF SPRINGFIELD, Appellee.**

[Cite as *Seale v. Springfield* (1996), 113 Ohio App.3d 384.]

Court of Appeals of Ohio,
Second District, Clark County.

No. 95 CA 117.

Decided Aug. 9, 1996.

*A. Robert Hutchins,* for appellant.

*Robin B. DeBell,* Springfield Law Director, for appellee.

WOLFF, Judge.

Michael Seale appeals from a judgment of the Clark County Court of Common Pleas, which granted summary judgment to the city of Springfield, City Manager Matthew J. Kridler, and Fire Chief Donald J. Lee (collectively, "the city").

The pertinent facts and procedural history, as established by the record, are as follows. Seale was employed as a firefighter/paramedic for the city from March 1988 to July 1991. On July 12, 1991, Matthew Kridler sent Seale a letter which stated that Seale's employment with the city was terminated, effective immediately, and outlined the reasons for his firing. The letter stated that Seale was fired for not having completed sufficient hours of continuing education to meet the minimum requirements for recertification as a paramedic, for placing a false signature on a Springfield Fire Division Class Attendance Record indicating that he had attended a continuing education program at Miami Valley Hospital when he had not, and for executing an Ohio Department of Education recertification application for paramedics which contained false information.

On July 12, 1993, Seale filed a complaint against the city based on religious discrimination in employment pursuant to R.C. Chapter 4112. Seale alleged that as a "non-Catholic" firefighter he had suffered disparate treatment by his Catholic supervisors and had been treated more severely than his Catholic co-workers for like infractions of department rules, and that such treatment eventually led to his discharge.

The city filed a motion for summary judgment on July 17, 1995. As evidentiary support for its motion, the city offered (1) excerpts from Seale's deposition, (2) an affidavit by Fire Chief Donald Lee, (3) the July 12, 1991 termination letter, (4) a letter to Seale dated September 16, 1991, from Bonnie Howell, the secretary of the civil service commission, informing Seale that the commission had decided to deny his appeal and uphold his dismissal, and (5) a copy of the August 8, 1990 written reprimand Seale had received from Lee for a fire engine accident in June 1990. Seale filed a response to the city's motion for summary judgment and offered excerpts from his deposition testimony and the July 12, 1991 termination letter as evidentiary support. Seale's complete deposition transcript was not made a part of the record in the trial court. In an October 5, 1995 entry, the trial court granted the city's motion for summary judgment.

Seale asserts one assignment of error on appeal.

"The trial court erred in finding that there were no genuine issues of material fact to be resolved and that defendant was entitled to judgment as a matter of law."

Seale contends that the trial court erred in granting the city's motion for summary judgment because the portions of Seale's deposition testimony referred to in the parties' summary judgment filings indicate that several genuine issues of material fact existed and, therefore, the city was not entitled to judgment as a matter of law.

Our review of the trial court's decision to grant summary judgment in favor of the city is *de novo*. Summary judgment is appropriate when the following have been demonstrated: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the moving party, who is entitled to have the evidence construed most strongly in his favor. *Van Fossen v. Babcock & Wilcox Co.* (1988), 36 Ohio St.3d 100, 117, 522 N.E.2d 489, 505; *Harless v. Willis Day Warehousing Co., Inc.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 74, 375 N.E.2d 46, 47; Civ.R. 56(C).

The moving party bears the initial burden of showing that there are no genuine issues of material fact. *Harless, supra,* at 66, 8 O.O.3d at 74, 375 N.E.2d at 47; *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 115, 526 N.E.2d 798, 801–802. Once

the movant meets this burden, the nonmoving party may not rely on the mere allegations of his pleadings to survive a motion for summary judgment, but must set forth specific facts showing that there is a genuine issue for determination at trial. *Savransky v. Cleveland* (1983), 4 Ohio St.3d 118, 119, 4 OBR 364, 365–366, 447 N.E.2d 98, 99; Civ.R. 56(E). Indeed, the nonmoving party must produce evidence on any issue upon which the movant meets its initial burden and for which the nonmoving party bears the burden of production at trial. *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, paragraph three of the syllabus, as limited in *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293–295, and 299, 662 N.E.2d 264, 273–275, 278 (Pfeifer, J., concurring).

The substantive law applied in a case determines which facts are material and whether those facts create genuine issues for determination at trial. Here, the substantive law to be applied is that of employment discrimination. In *McDonnell Douglas Corp. v. Green* (1972), 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668, the Supreme Court set forth a tripartite formula for allocating the burden of production and order of proof in Title VII discriminatory treatment cases. *Id.* at 802, 93 S.Ct. at 1824, 36 L.Ed.2d at 677–678. While this is not a Title VII discriminatory treatment case, the Ohio Supreme Court has determined that federal case law interpreting Title VII is generally applicable to cases involving alleged violations of R.C. Chapter 4112. *Plumbers & Steamfitters Joint Apprenticeship Commt. v. Ohio Civ. Rights Comm.* (1981), 66 Ohio St.2d 192, 196, 20 O.O.3d 200, 202, 421 N.E.2d 128, 131.

Under the *McDonnell Douglas* formula, the employment discrimination plaintiff bears the burden of establishing a prima facie case of discrimination. Once a plaintiff establishes a prima facie case, the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason" for the employee's discharge. *McDonnell Douglas, supra,* 411 U.S. at 802, 93 S.Ct. at 1824, 36 L.Ed.2d at 678; *Plumbers & Steamfitters, supra,* 197, 20 O.O.3d at 203, 421 N.E.2d at 132. If the defendant can state such a reason, then the plaintiff must demonstrate that the defendant's articulated reason is merely a pretext for impermissible discrimination. *McDonnell Douglas* at 804, 93 S.Ct. at 1825, 36 L.Ed.2d at 679; *Plumbers & Steamfitters, supra,* 66 Ohio St.2d at 198, 20 O.O.3d at 203, 421 N.E.2d at 132.

A plaintiff may establish a prima facie case either directly by presenting evidence that the employer more likely than not was motivated by discriminatory animus, or indirectly by satisfying a multiprong test which raises the inference of discriminatory intent. *Mitchell v. Toledo Hosp.* (C.A.6, 1992), 964 F.2d 577, 582, fn. 4; *Mauzy v. Kelly Serv., Inc.* (1996), 75 Ohio St.3d 578, 586–587, 664 N.E.2d 1272, 1279. Accordingly, to avoid summary judgment, Seale was required to introduce evidence, or point to evidence already in the record, that if believed,

would have been sufficient to support a judgment in his favor. *Anderson v. Liberty Lobby, Inc.* (1986), 477 U.S. 242, 249–250, 106 S.Ct. 2505, 2510–2511, 91 L.Ed.2d 202, 212.

Here, Seale has not directly presented any evidence from which a jury could conclude that the city more likely than not discharged him because he was a non-Catholic. Seale testified that he was not questioned regarding his religious affiliation when he was interviewed and tested for the position of firefighter/paramedic, nor was he asked any time during his employment to indicate his religious affiliation on a document related to his employment. According to Seale, there were no restrictions placed on the terms or conditions of his employment based on his religion and none of the benefits of his employment, such as transfer rights, promotion rights, or leave benefits were different from those of other employees. Seale also testified that he had never heard Lee or anyone else refer to an individual's religious affiliation in connection with a disciplinary matter. Moreover, Seale estimated the breakdown between Catholic and non-Catholic firefighters was "about 50/50."

Because Seale did not directly present evidence which established his prima facie case, he was required to indirectly establish it by satisfying certain elements which give rise to an inference of discrimination. Thus, the next question is what proof Seale needed to indirectly establish a prima facie case of religious discrimination.

In *McDonnell Douglas, supra,* the court set forth the following elements a plaintiff needs to establish to prove a prima facie case of race discrimination in hiring under Title VII of the Civil Rights Act of 1964:

"(i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications." 411 U.S. at 802, 93 S.Ct. at 1824, 36 L.Ed.2d at 677.

The court noted that the proof required to establish a prima facie case of discrimination would necessarily vary depending upon the factual situation presented. *Id.* at 802, 93 S.Ct. at 1824, 36 L.Ed.2d at 677–678, fn. 13. The Ohio Supreme Court has interpreted *McDonnell Douglas*'s basic evidentiary framework to be a "flexible formula to ferret out impermissible discrimination in the hiring, firing, promoting, and demoting of employees." *Plumbers & Steamfitters, supra,* 66 Ohio St.2d at 197, 20 O.O.3d at 203, 421 N.E.2d at 131.

Accordingly, both Ohio courts and the Sixth Circuit have applied a modified version of the *McDonnell Douglas* test to discrimination claims based on various

factual situations. See, *e.g., Wagner v. Allied Steel & Tractor Co.* (1995), 105 Ohio App.3d 611, 615, 664 N.E.2d 987, 989 (in reverse racial discrimination case, first element of *McDonnell Douglas* test is modified to require plaintiff to show background circumstances supporting inference that employer was unusual employer who discriminated against nonminority employees); *Marvel Consultants, Inc. v. Ohio Civ. Rights Comm.* (1994), 93 Ohio App.3d 838, 841, 639 N.E.2d 1265, 1267 (applying modified *McDonnell Douglas* elements to sex discrimination claim); *Neal v. Hamilton Cty.* (1993), 87 Ohio App.3d 670, 677, 622 N.E.2d 1130, 1135–1136 (applying modified *McDonnell Douglas* elements to handicap discrimination claim); *Mitchell v. Toledo Hosp.* (C.A.6, 1992), 964 F.2d 577, 582 (in racial and age discrimination claim, plaintiff may show that "a comparable non-protected person was treated better" as alternative to fourth element of *McDonnell Douglas* test); *Kohmescher v. Kroger Co.* (1991), 61 Ohio St.3d 501, 504, 575 N.E.2d 439, 441–442 (applying modified *McDonnell Douglas* test to age discrimination claim).

The city argues that Seale has failed to prove a prima facie case of discrimination and premises its argument on the elements that a plaintiff must prove to show a prima facie case of age discrimination, as set forth in *Kohmescher, supra:*

"(1) that he or she was a member of a statutorily protected class, (2) that he or she was discharged, (3) that he or she was qualified for the position, and (4) that he or she was replaced by, or that the discharge permitted the retention of, a person not belonging to the protected class." *Id.* at syllabus.

Based on these elements, the city argues that Seale has failed to demonstrate that he was qualified for the position and that he was replaced by someone not belonging to the protected class. Applying the *Kohmescher* elements to the record before us, and assuming *arguendo* that Seale is a member of a protected class, we agree that Seale has failed to present any evidence of the third and fourth elements. Indeed, the evidence is clear that Seale was not qualified for the position of firefighter/paramedic because he failed to meet the minimum requirements for recertification as a paramedic (Element 3).

In our judgment, however, the facts and circumstances giving rise to a religious discrimination claim of this type are sufficiently distinguishable from those that result in an age discrimination claim that modification of the standard set forth in *Kohmescher* is required. We have not, however, found an Ohio case dealing with the specific factual situation here, that is, one in which an employment discrimination plaintiff claims that he was discharged because he did not hold the same religious beliefs as his supervisors.

The court in *Shapolia v. Los Alamos Natl. Laboratory* (C.A.10, 1993), 992 F.2d 1033, did address this issue. In *Shapolia,* the plaintiff, Alexander Shapolia, was a nonpracticing member of the Greek Orthodox church while his supervisor, Ray

Martin, and the Associate Director who handled administrative review proceedings, John Whetten, were members of the Mormon church. Shapolia claimed that a negative job evaluation he received and the subsequent review procedures were tainted by religious discrimination and that he was terminated as a result of the discrimination. Essentially, he claimed that he had been discriminated against because he was a non-Mormon.

The court observed that the case was similar to disparate treatment cases in which a plaintiff claims that he was terminated because of his sex or race, but declined to apply the standard for establishing a prima facie case based on racial or sexual discrimination for two reasons. First, the court opined that application of the "protected class" factor was inappropriate because it implies that a plaintiff must have some identifiable characteristic to be entitled to protection against discrimination. Because the alleged discrimination was not targeted against a particular religion, but rather was targeted against Shapolia because he did not share particular religious beliefs, the court concluded that use of the protected class factor would be misleading. Second, because the discrimination was directed against non-Mormons, and non-Mormons constitute a majority of society, the court reasoned that the case more closely resembled a reverse discrimination case in which a different, modified version of the *McDonnell* test should be applied.

Accordingly, the court held that in cases where a plaintiff claims that he was discriminated against because he did not share the religious beliefs held by his supervisors, the plaintiff is required to show the following to make out a prima facie case:

"(1) that he was subjected to some adverse employment action; (2) that, at the time the employment action was taken, the employee's job performance was satisfactory; and (3) some additional evidence to support the inference that the employment actions were taken because of a discriminatory motive based upon the employee's failure to hold or follow his or her employer's religious beliefs." *Shapolia, supra,* 992 F.2d at 1038.

The court noted that the second element was required to eliminate the most common reasons for an employment decision, and that the third element was consistent with the reverse discrimination test it had set forth in *Notari v. Denver Water Dept.* (C.A.10, 1992), 971 F.2d 585, 589. At least one Ohio appellate court has applied the *Notari* test in a reverse racial discrimination case. *Wagner, supra,* 105 Ohio App.3d at 615, 664 N.E.2d at 989.

We are persuaded by the *Shapolia* court's reasoning and thus will apply the standard set forth in its decision to determine whether Seale has indirectly established a prima facie case of religious discrimination.

■    Initially, there is no question that by being discharged from his position as a firefighter/paramedic, Seale has suffered an adverse employment action.  However, Seale does not appear to dispute the fact that his job performance at the time of his discharge was unsatisfactory.  One basis for Seale's discharge was that he had not completed sufficient hours of continuing education to meet the minimum requirements for recertification as a paramedic and that recertification as a paramedic was a condition of his continuing employment with the Springfield Fire Division.  In paragraph eleven of his complaint, Seale concedes that "[d]espite his best efforts, [he] was unable to meet all of the recertification requirements mandated by the City of Springfield Fire Division * * *."  Thus, Seale has not demonstrated that his job performance was satisfactory at the time of his discharge.

■    Although Seale has failed to show the second element necessary to establish his prima facie case, we will still address the third element, whether he has presented some additional evidence to support the inference that his discharge was the result of a discriminatory motive because he was not Catholic. Seale contends that he was treated differently from Catholic co-workers for similar conduct on four occasions.

First, Seale asserts that at least three other firefighters falsified or were recertified using falsified documents, but that they were not discharged because they were Catholic.  As his only support for this contention, Seale directs us to three pages of his deposition testimony.  The substance of his testimony is that Dick Copeland, an EMS administrator, "signed off" on Jerry Numbers' and Bruce Mitchell's March 1990 continuing education hours, which were applied toward their recertification, when Copeland knew that they had not attended a continuing education class.  Seale testified that he knew that Numbers and Mitchell were Catholic because he had asked them.  He also stated that he did not believe that Copeland would have signed off on his hours, presumably because he was a non-Catholic.  Later in his testimony, Seale also mentioned a third individual, Daniel Pamer, but stated only that Pamer was Catholic and that Seale had been treated differently from Pamer with respect to certification.

While Seale asserts that these other instances of falsification occurred, he does not assert that Lee, Kridler, or any other person in a position of authority knew about the alleged falsifications, nor has he presented any evidence to that effect. In his affidavit attached to the city's motion for summary judgment, Lee stated that during his tenure as Chief of the Fire Division, from 1989 to present, no other matter had come to his attention in which a firefighter/paramedic had been accused of falsifying a document or documents concerning recertification as a paramedic.  We note that Lee's tenure encompassed the time of the other alleged falsifications, March 1990.  Lee also stated that his recommendation that Seale

be fired was in no way related to, or based upon, any knowledge of Seale's religious preferences or practices, and that the Fire Division does not keep any document reflecting the religious affiliation of any member of the Fire Division. Even accepting as true that Numbers, Mitchell, Pamer, and Lee were Catholic, for Seale to prove that he was discriminated against in relation to the other firefighters in this instance, he needed to show, at a minimum, that Lee, Kridler, or someone else in a position of authority knew about the other alleged incidents of falsification. Seale has failed to show this.

Next, Seale claims that he was disciplined for a June 1990 "improper backing" accident, while another firefighter, Kenny Bostic, had a similar accident and was not disciplined. Seale's only evidence in support of his allegation that Bostic was Catholic, that he was involved in a similar accident, and that he was not disciplined was the following deposition testimony:

"Q: In connection with your conversation with Mr. [Dick] Bennett [union president], about the discipline over the backing incidents, did he mention anything about religion?

"A: No, he did not.

"Q: And then what was it then about this incident with the backing and the discipline that caused you to think religion had something to do with it?

"A: Another fire fighter had had an accident in the past that was Catholic—

"Q: Yes.

"A: —and he has a Catholic background. * * *

"Q: Who is this person that you are speaking of?

"A: Kenny Bostic. * * * He had some kind of accident with a fire engine and there was nothing done to him. And this had been five or six years before this ever happened. We checked every disciplinary record and no one in that department had ever been, they had never tried to take that kind of action against anyone for scratching an engine or medic unit or whatever. At that time we did not explore that to see who was Catholic and who wasn't. * * *

"Q: How did you come to know about Mr. Bostic's religious affiliation?

"A: I don't know. I worked with him, I just knew it.

"Q: How was it that you knew he had a certain religious affiliation?

"A: I supposed.

"Q: What did he tell you about his religious affiliation?

"A: He didn't really talk about it much. * * *

"Q: Just to be clear, how was it that you came to know * * * that Mr. Bostic had a Catholic background?

"A: I can't really tell you how we came about it but we have talked about it."

The record reveals that as a result of Seale's accident, a fire engine was extensively damaged and placed out of service for approximately two months, with an estimated repair cost of $25,000. Seale was given a written reprimand for the incident. Even accepting as true that Bostic was Catholic and that he had an accident involving a fire engine, Seale has presented no evidence that Bostic's accident was similar to his accident. See *Williams v. United Parcel Service, Inc.* (July 19, 1995), Miami Cty.App. No. 14659, unreported, 1995 WL 444402; *Mitchell, supra,* 964 F.2d at 583. Therefore, there is no basis for concluding that the disciplinary action taken against Seale and the lack of discipline against Bostic were a result of either's religious affiliation. Furthermore, Seale's accident occurred more than one year before he was fired, and was not a basis for his discharge.

Seale also alleges that as a result of an "incident" involving himself and a Catholic co-worker, Todd Bowser, he was given a verbal reprimand by Lee, but Bowser, "who was an equal participant in the incident complained of," was not disciplined. Other than this assertion in Seale's deposition, the record contains no other information about this incident. Without more, a jury could not reasonably conclude from Seale's mere assertion that the disciplinary action taken against him and the lack of action against Bowser were a result of either's religious affiliation.

Finally, Seale contends that he was prohibited from applying certain continuing education hours towards recertification while a Catholic firefighter, George Elam, was permitted to do so. As with Seale's other assertions, the only evidence he has presented with respect to this allegation is his deposition testimony. Insofar as it is a part of the record, Seale's complete deposition testimony on this matter is as follows.

"A: He [Dick Copeland] signed another man—he counted, when this all came about on my certification hours, me not having enough hours, Mr. Copeland told me I could not count four of my hours which was a hazardous materials class put on by the State of Ohio but Mr. Copeland told another firefighter, Mr. Copeland did count another firefighter's hours.

"Q: And who was that?

"A: George Elam."

Even accepting as true that Copeland allowed Elam to apply continuing education hours toward recertification but did not allow Seale to apply the same hours, Seale has presented no evidence that Copeland based his decision on

Seale's and Elam's religious affiliation, or if he did, that Lee or Kridler knew about it. Based on the foregoing, we conclude that Seale did not go forward with evidence sufficient to establish a prima facie case of religious discrimination.

Assuming, *arguendo,* that Seale had made out a prima facie case of discrimination, it would not necessarily have saved him from summary judgment because the inference of discrimination created by the prima facie case is dispelled if the employer articulates a nondiscriminatory reason for its action, unless the employee shows that the proffered reason is not the true reason. To do this, the employee must introduce documentary evidence which demonstrates that there is reason to disbelieve the employer's explanation. *Williams, supra,* citing *Gagne v. Northwestern Natl. Ins. Co.* (C.A.6, 1989), 881 F.2d 309, 314.

Here, the city's reason for firing Seale was that he had not completed sufficient continuing education hours to be recertified as a paramedic, and that he had falsified two documents in relation to his recertification, a Springfield Fire Division Class Attendance Record and an Ohio Department of Education recertification application. Undoubtedly, Seale was aware of the Springfield Fire Division's recertification requirements. Despite this knowledge, he failed to meet the recertification requirements and instead falsified documents in an attempt to become recertified as a paramedic.

Once the city articulated this legitimate, nondiscriminatory reason for Seale's discharge, the burden shifted back to Seale to show that the city's reason was merely a pretext. Seale essentially argued that he was fired because he was not Catholic, yet he admitted that he had failed to meet the recertification requirements and that he had submitted continuing education documents which "he knew or should have known contained false and/or incomplete information and signatures." We find that Seale has failed to disprove the truth of the city's stated reason for his dismissal.

Consequently, the trial court properly determined that Seale had failed to present evidence showing that genuine issues of material fact existed with respect to his religious discrimination claim, and that the city was entitled to judgment as a matter of law.

The assignment of error is overruled.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

FAIN and GRADY, JJ., concur.