{¶ 23} I respectfully dissent from the majority view that the trial court erred in denying appellant's motion for directed verdict and its motion for judgment notwithstanding the verdict or, in the alternative, for a new trial. Further, I disagree with the majority view that appellee failed to establish an adverse employment action resulting in her discharge.
 {¶ 24} In reviewing a motion for judgment notwithstanding the verdict or alternative motion for a new trial, the court is to give the nonmoving party the benefit of all reasonable inferences that may be drawn from the evidence. Broz v. Winland (1994), 68 Ohio St.3d 521, 526. Moreover, a directed verdict generally is only appropriate where the party opposing the motion fails to adduce any evidence on the essential elements of his claim or defense. O'Day v. Webb (1972), 29 Ohio St.2d 215. In this case, Stevenson presented sufficient credible evidence to permit reasonable minds to find she had proven her claim of age discrimination.[1]
 {¶ 25} A plaintiff may establish a prima facie case of age discrimination indirectly by demonstrating the following four elements that were set forth by the Ohio Supreme Court in Barker v. Scovill, Inc.
(1983), 6 Ohio St.3d 146: (1) that she was a member of the statutorily protected class; (2) that she was discharged; (3) that she was qualified for the position; and (4) that she was replaced by, or that her discharge permitted the retention of, a person not belonging to the protected class. Kohmesher v. Kroger Co. (1991), 61 Ohio St.3d 501. The four-prong prima facie test in circumstantial cases is flexible. See Id.
 {¶ 26} Tri-C does not dispute that Stevenson established she was a member of the statutorily protected class or that she was qualified for the position. Thus, only the second and fourth elements of a prima facie case are at issue.
 {¶ 27} The majority holds that Stevenson failed to show she suffered an adverse employment action because she agreed to retire in exchange for a one-month contract extension and greater retirement benefits. The majority view ignores the fact that the adverse action preceded this agreement. Had Stevenson been renewed, she would not have sought the extension. This supposed "cleansing" by Tri-C fails to address the fact that Stevenson's departure was not voluntary and the one-month extension came at a price: forced resignation or retirement.
 {¶ 28} The majority's reliance on Ackerman v. Diamond ShamrockCorp. (C.A. 6 1982), 670 F.2d 66, is not persuasive. Ackerman, unlike the present case, had no evidence of discriminatory intent in the record to rebut the assertion that the employee's acceptance of an early retirement offer was voluntary. Here there was ample evidence in the record, if believed by the trier of fact, to establish discriminatory intent.
 {¶ 29} The employment evaluations received by Stevenson included evaluations of her leadership. Dr. Johnson rated Stevenson's performance for the 1997-1998 time period as having "(e)xceeded targets by meeting work objectives and providing value-added support of college and unit goals." Dr. Johnson also commented that for Stevenson's "overall coordination and leadership of health careers and sciences college wide, Dr. Stevenson's performance can be summarized as exceeding expectations." Even as late as January 2000, Stevenson's evaluations indicated she "met work objectives in support of College and unit goals." These evaluations bring into question the viability of the claim that she was discharged for a lack of leadership. Further, Stevenson was never subjected to progressive discipline, an option available to Tri-C.
 {¶ 30} Stevenson's relationship with her supervisor deteriorated after she began walking with a cane at the age of 63. Stevenson testified that Dr. Johnson began to shy away from her. When he looked at her, he would shake his head and look the other way. He would inquire as to her health, and when she came into a meeting, he asked her if she really needed to use the cane. Dr. Johnson testified that he began to question "whether or not [Stevenson] would be able to lead the college in the future." Stevenson's hip replacement surgery followed. A letter, dated May 2, 2000, informed Stevenson that her contract would not be renewed.
 {¶ 31} These were not mere conclusory allegations by Stevenson, but specific evidence indicating discriminatory conduct. Details concerning Stevenson's age, hip replacement, use of a cane, overall medical condition, and her supervisor's reaction to those conditions, in contrast to her excellent employment history, created a material issue of fact as to whether Stevenson suffered an adverse employment action.
 {¶ 32} Additionally, no viable option for "legitimate opportunities for continued employment" existed under Tri-C's action. Where evidence is presented that an employee has no prospect of continued employment as a result of his employer's discriminatory motives, and the employee decides upon a departure option best suited to her needs, sufficient evidence has been presented for a trier of fact to conclude that an adverse action has occurred from a constructive discharge. SeeScott v. The Goodyear Tire Rubber Co. (C.A. 6 1998), 160 F.3d 1121. The evidence presented in this case supports such a finding.
 {¶ 33} The letter Tri-C sent to Stevenson on May 2, 2000 stated "the College's administration will not be recommending your re-employment with the College for fiscal year 2000-2001. As a result, your current one-year contract with the College, which expires on June 30, 2000, will not be renewed." This letter clearly informed Stevenson that her contract was not being renewed.
 {¶ 34} A reasonable trier of fact could conclude that Tri-C's termination of Stevenson's employment by nonrenewal constituted a discharge. This court has previously recognized, in a case alleging a civil rights violation, the issue is whether the plaintiff's rights as a member of a protected class were violated when her employer failed to renew her contract. Csejpes v. Cleveland Catholic Diocese (1996),109 Ohio App.3d 533, 537-538. As discussed above, Stevenson presented evidence that her nonrenewal was based on discriminatory motives. Faced with this adverse action and with no option for continued employment, Stevenson pursued her departure options.
 {¶ 35} Stevenson testified that after she received Tri-C's nonrenewal letter, she went to see Susan Gifford, a human resources representative, and requested a one-month extension of her contract in order to be eligible for full retirement benefits. Stevenson further testified that Ms. Gifford informed her that if she wanted the extension, she would need to write a letter indicating that she would retire or resign from Tri-C. On May 3, 2000, Stevenson sent a letter to Tri-C requesting the extension and indicating that if the request were granted, she would submit a letter of her intent to retire August 1, 2000 and a letter of resignation effective July 31, 2000. All of these actions occurred after Stevenson was told her contract was not being renewed. Thus, sufficient evidence was presented for a trier of fact to conclude that an adverse action occurred from a constructive discharge and that Stevenson did not voluntarily retire. See Scott, 160 F.3d 1121.
 {¶ 36} The majority's view that Stevenson voluntarily retired disregards the key inquiry of whether Tri-C discriminated against Stevenson on account of her age. Since sufficient evidence was presented for reasonable minds to conclude that Stevenson was discharged on account of her age and did not voluntarily retire, the trial court appropriately submitted the issue to the jury. See Kohmescher, 61 Ohio St.3d at 504. Therefore, the second element of the Barker test was satisfied.
 {¶ 37} Due to the majority's narrow application of the second element of the Barker test, the majority does not reach a review of the fourth element of that test. Under the fourth element, Stevenson was required to show she was replaced by, or that her discharge permitted the retention of, a person not belonging to the protected class. It is my view that even under this element of the test, appellant met her burden of establishing a prima facie case.
 {¶ 38} Stevenson's employment at Tri-C ended August 1, 2000, when she was 64 years old. At the time this case went to trial in May 2002, the college had not hired a permanent replacement for her position. While the college twice filled the position on an interim basis,[2] those two individuals are not replacements for purposes of a prima facie case.Clevidence v. Wayne Savings Community Bank (N.D.Ohio. 2001),143 F. Supp.2d 901, 908; Bush v. American Honda Motor Co., Inc. (S.D.Ohio 2002), 227 F. Supp.2d 780, 791.
 {¶ 39} Since a permanent replacement has not been hired, Stevenson's position remains open. Thus, the issue to be addressed is whether under the circumstances of this case, Stevenson presented sufficient evidence to satisfy the fourth element of her prima facie case.[3]
 {¶ 40} The Ohio Supreme Court has rejected strict application of the Barker test. As recognized by the Ohio Supreme Court, strict application of the Barker guidelines has led courts to "lose sight of the ultimate inquiry in [age discrimination cases], i.e., whether evidence of age discrimination is present in the case." Kohmescher,61 Ohio St.3d at 505.
 {¶ 41} The Ohio Supreme Court has held that "age discrimination cases brought in state courts should be construed and decided in accordance with the federal guidelines and requirements." Barker,6 Ohio St.3d at 147. The Barker test for establishing a prima facie cause of action in an age discrimination case was a direct adaptation of the evidentiary standards and guidelines established by the United States Supreme Court in McDonnell Douglas Corp. v. Green (1973), 411 U.S. 792,802; Kohmesher, 61 Ohio St.3d 501.
 {¶ 42} In McDonnell Douglas Corp. v. Green, 411 U.S. 792, the United States Supreme Court established a flexible formula to ferret out impermissible discrimination in the hiring, firing, promoting and demoting of employees. Both Ohio and federal courts, applying theMcDonnell Douglas framework for establishing a prima facie case of discrimination, have modified the requisite elements differently based on various factual situations. Several courts have found in the case of termination, the fourth element may be established by showing that the position remained open or that the position remained open and the employer sought applicants with similar qualifications to fill the position. SeeSeale v. City of Springfield (1996), 113 Ohio App.3d 384, 390; Cisnerosv. Dr. Herbert Birk (Apr. 11, 1995), Franklin App. No. 94APE08-1255;Lesch v. Crown Cork Seal Co. (7th Cir. 2002), 282 F.3d 467, 472;Dammen v. UniMed Med. Ctr. (8th Cir. 2001), 236 F.3d 978, 981; Bialas v.Greyhound Lines, Inc. (8th Cir. 1995), 59 F.3d 759, 762-763; see, also,Outzen v. Continental General Tire, Inc. (Feb. 2, 2000), Summit App. No. 19604 (applied the O'Connor test).
 {¶ 43} Under a strict application of the fourth element in this case, Stevenson would never be able to show she was replaced by, or that her discharge permitted the retention of, a person not belonging to the protected class. More than two years elapsed from notification of her discharge to the date of trial. Her position remained open during this entire period. Two interim persons placed in the position were not considered permanent replacements. Tri-C continued to advertise and interview candidates for the position, yet an internal "vacancy file" that documented applicants "* * * could not be located by the Collegeafter a diligent search." (Emphasis added.) Strict application of the fourth element in this case would allow Tri-C to hold a position open indefinitely, without reason, and effectively preclude a potentially valid claim from being litigated.
 {¶ 44} Applying the flexible guidelines set forth above, I would affirm the trial court's decision and the jury findings in this case. Under the specific facts and circumstances of this case, the fourth element of the Barker test was satisfied where the employer retained interim persons not considered as permanent replacements for the position, the position remained open for an unreasonable amount of time with no justifiable reason for the delay, and sufficient questions of fact existed to allow a jury to conclude the plaintiff was, in fact, discharged because of her age. Accordingly, the trial court did not commit an error in finding Stevenson set forth sufficient evidence to establish her prima facie case.
 {¶ 45} Once a prima facie case is established, a presumption of age discrimination is created. Ahern, 137 Ohio App.3d at 770. The employer may overcome the presumption by coming forward with evidence of a legitimate, nondiscriminatory reason for the plaintiff's discharge.Kohmesher, 61 Ohio St.3d 501. If the employer presents a nondiscriminatory reason for the discharge, the plaintiff must then present evidence that the employer's proffered reason was a mere pretext for unlawful discrimination. Manofsky v. Goodyear Tire Rubber Co.
(1990), 69 Ohio App.3d 663, 668. The plaintiff's burden is to prove that the employer's reason was false and that discrimination was the real reason for the discharge. Wagner v. Allied Steel Tractor Co.
(1995), 105 Ohio App.3d 611, 617.
 {¶ 46} The view that Stevenson did not rebut Tri-C's assertion of a legitimate, nondiscriminatory reason for its actions is not supported by all the facts in the record. Tri-C's articulated reason for Stevenson's discharge was that Stevenson lacked the leadership skill necessary to lead the college's programs in heath careers and sciences. In support of its "lack of leadership" reason, Dr. Johnson testified that Stevenson failed to timely develop the surg-tech program and failed to resolve a conflict between two employees in the EMT program.
 {¶ 47} Stevenson countered Tri-C's "lack of leadership" reason by presenting evidence from which a jury could have reasonably concluded that the proffered reason was pretextual and that she was actually terminated because of her age. Specifically, there was evidence that Johnson had a proven track record with leadership positions, she had rescued and reshaped Tri-C's nursing program, and she had been regarded by Tri-C's president and several deans as a very strong leader. Further, Dr. Mohammad Entezampour, a dean who was substantially younger than Stevenson, was also charged with resolving the EMT personnel issue and was not terminated for failing to fix the problem.
 {¶ 48} There was also evidence that Dr. Johnson frequently undermined Stevenson's authority by meeting with people under her chain of command without informing her. Stevenson testified that Dr. Johnson would not appoint her to any committees and did not show her the same respect he gave to her younger peers.
 {¶ 49} Additionally, specific facts allowed a jury to determine the existence of age discrimination in Stevenson's nonrenewal. Stevenson was a 64-year-old dean who was forced to use a cane in her final year of employment. Stevenson testified that Dr. Johnson's treatment of her became more harsh when she began using a cane. After returning from hip-replacement surgery, Stevenson was characterized as "lacking leadership." Her supervisor, Dr. Johnson, actually acknowledged the ultimate issue at trial by stating: "* * * the question that I had to deal with was whether or not [Stevenson] would be able to lead the college in the future." (Emphasis added.) However, her performance evaluations were good, and she was never subjected to progressive discipline for allegations of substandard work performance.
 {¶ 50} Based on this evidence, a jury could have believed that Dr. Johnson's concerns surrounding the surg-tech program and EMT personnel issue did not reflect bad leadership by Stevenson. Also, a jury reasonably could have inferred from the evidence that Stevenson's discharge was, in fact, because of her age. When construing the evidence in the light most favorable to Stevenson, it is clear that she presented sufficient evidence for reasonable minds to find in her favor on the claim of age discrimination. Therefore, I would affirm the trial court's decision to deny appellant's motion for directed verdict and its decision to deny appellant's motion for judgment notwithstanding the verdict or, in the alternative, for new trial.[4]
 {¶ 51} In addition to upholding the trial court's decision and jury verdict on the underlying claim, I would also affirm the trial court's decision to award Stevenson prejudgment interest.
 {¶ 52} To award prejudgment interest, a trial court must find that the party required to pay the judgment failed to make a good faith effort to settle and that the party to whom the judgment is to be paid did not fail to make a good faith effort to settle the case. Moskovitz v. Mt.Sinai Medical Ctr. (1994), 69 Ohio St.3d 638. The determination to award prejudgment interest is within the sound discretion of the trial court and should not be reversed absent a clear abuse of that discretion. Ahern,137 Ohio App.3d at 777.
 {¶ 53} In Kalain v. Smith (1986), 25 Ohio St.3d 157, at the syllabus, the court held:
 {¶ 54} "A party has not `failed to make a good faith effort to settle' under R.C. 1343.03(C) if he has (1) fully cooperated in discovery proceedings, (2) rationally evaluated his risks and potential liability, (3) not attempted to unnecessarily delay any of the proceedings, and (4) made a good faith monetary settlement offer or responded in good faith to an offer from the other party. If a party has a good faith, objectively reasonable belief that he has no liability, he need not make a monetary settlement offer."
 {¶ 55} In this case, Stevenson's counsel made a settlement demand of $500,000 on March 27, 2001. Tri-C did not respond with an offer until May 6, 2002. This response came after Stevenson's counsel wrote a letter indicating that she had strong evidence of discrimination and pretext and that a verdict in favor of Stevenson would be substantial. Tri-C's offer was for $30,000. Stevenson countered with a reduced demand of $350,000, to which Tri-C offered $60,000. After the jury returned a verdict in Stevenson's favor and awarded her $670,000 in compensatory damages, the trial court attempted to engage the parties in a post-verdict settlement discussion. The trial court ordered the parties to have individuals with settlement authority present. Tri-C failed to comply with this order.
 {¶ 56} The trial court also permitted the disclosure of a letter from Tri-C's counsel to Tri-C's insurance carrier in which counsel estimated that the case could not settle for less than $150,000 and that negotiations should begin in the $50,000 range. This court has previously recognized that otherwise privileged documents may lose their privilege for purposes of prejudgment interest discovery. Radovanic v. Cossler
(2000), 140 Ohio App.3d 208, 216. As stated in Radovanic: "statements, memoranda, documents, etc. generated in an attorney-client relationship tending to establish the failure of a party or an insurer to make a good faith effort to settle a case contrary to the purposes of R.C. 1343.03(C) are not protected from discovery in an R.C. 1343.03(C) proceeding for prejudgment interest." Id.
 {¶ 57} The facts in this case show that Tri-C was aware of the strength of Stevenson's case, yet failed to make a reasonable settlement offer or cooperate in settlement negotiations. Therefore, I would find that the trial court did not abuse its discretion by awarding prejudgment interest.
 {¶ 58} The decision of the trial court should be affirmed.
[1] The jury returned a unanimous verdict in Stevenson's favor on her claim of age discrimination and awarded Stevenson $670,000 in economic damages. Additionally, the trial court awarded Stevenson prejudgment interest.
[2] The first interim dean, Helen Jefferson, quit after two months. The second interim dean, Jonathon O'Connor, was 16 years younger than Stevenson. Neither was being considered to permanently fill the position.
[3] In Mauzy v. Kelly Serv., Inc. (1996), 75 Ohio St.3d 578, the Ohio Supreme Court observed that the fourth element was questionable in light of the United States Supreme Court decision in O'Connor v. Consol. CoinCaterers Corp. (1996), 517 U.S. 308. While the Ohio Supreme Court reiterated the Barker test in Byrnes v. LCI Communications Holdings Co.
(1996), 77 Ohio St.3d 125, without reference to O'Connor, the plaintiff in Byrnes relied on direct evidence to establish age discrimination. Justice Resnick, writing a dissent, recognized the ultimate question of whether a plaintiff produced sufficient evidence to sustain a jury's finding of age discrimination. Id. at 132-133. In answering this question, Justice Resnick found that a plaintiff is entitled to prove her case by circumstantial evidence of age discrimination outside the confines of the four-element Barker test. Id. at 137. The Ohio Supreme Court recently allowed a discretionary appeal in Coryell v. Bank OneTrust Co. (2003), 98 Ohio St.3d 1475; 2003-Ohio-904, a case involving the application of the fourth element of the Barker test in an indirect age discrimination case.
[4] Tri-C's argument that the trial court erroneously denied its motion for summary judgment is not subject to review by this court. The denial of a motion for summary judgment involving issues of fact will not be reviewed on appeal where a trial was held on the matter as any error is rendered harmless. Continental Ins. Co. v. Whittington (1994),71 Ohio St.3d 150, at syllabus; Ahern v. Ameritech Corp. (2000),137 Ohio App.3d 754, 768-769.