**GESSNER, Appellant,**

v.

**CITY OF UNION, Appellee.**

[Cite as *Gessner v. Union,* 159 Ohio App.3d 43, 2004-Ohio-5770.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 20297.

Decided Oct. 8, 2004.

David M. Duwel and Todd T. Duwel, for appellant.

Lynette P. Ballato and Tabitha Justice, for appellee.

BROGAN, Judge.

{¶ 1} Daniel Gessner appeals from a judgment dismissing his age-discrimination case against the city of Union, Ohio. According to the complaint, Gessner was over 40 years of age when he retired from the Union police force and was replaced by a male under the age of 40. The complaint also made various allegations concerning constructive discharge, including that Gessner was continuously badgered about retirement by the city manager and that unjustified reprisals occurred. Specifically, the city manager placed Gessner on administrative leave and threatened to recommend to city council that Gessner's employment be terminated.

{¶ 2} Union filed an answer to the complaint on July 11, 2003, and also filed a motion to dismiss on the same date. The motion was based on Union's qualified immunity from suit under R.C. 2744.02(A), Gessner's failure to meet requirements for proving an age-discrimination claim, and the absence of a common-law public-policy claim for violations of Ohio's age-discrimination statute. Subsequently, the trial court granted the motion to dismiss on the latter two grounds, but overruled the motion to the extent that it was based on Union's qualified immunity. Gessner then appealed, raising as a single assignment of error that "the trial court erred in dismissing Plaintiff's complaint pursuant to Civ.R. 12(C)."

{¶ 3} After reviewing the record and applicable law, we find that the assignment of error has merit. Accordingly, the trial court judgment is reversed, and the cause is remanded for further proceedings.

I

{¶ 4} Civ.R. 12(C) provides that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Such motions are used to resolve questions of law. *State ex rel. Midwest Pride IV, Inc. v. Pontious* (1996), 75 Ohio St.3d 565, 570, 664 N.E.2d 931. The Ohio Supreme Court has stressed that under Civ.R. 12(C), "dismissal is appropriate where a court (1) construes the material allegations in the complaint, with all reasonable inferences to be drawn therefrom, in favor of the nonmoving party as true, and (2) finds beyond doubt, that the plaintiff could prove no set of facts in support of his claim that would entitle him to relief. Thus, Civ.R. 12(C) requires a determination that no material factual issues exist and that the movant is entitled to judgment as a matter of law." (Citations omitted.) Id.

{¶ 5} Our review of decisions on such motions is de novo. *Citicasters Co. v. Bricker & Eckler, L.L.P.*, 149 Ohio App.3d 705, 708, 2002-Ohio-5814, 778 N.E.2d 663. This means that we apply the same tests the trial court used. *State ex rel. Karmasu v. Tate* (1992), 83 Ohio App.3d 199, 202, 614 N.E.2d 827.

{¶ 6} The trial court appears to have conducted a minitrial based strictly on the pleadings. The court first concluded that Gessner had been constructively discharged and had met all the elements of an age-discrimination claim. The court then found that Union, therefore, had the burden to prove a legitimate business reason for the discharge. This burden, according to the court, was met because Union had attached a letter to the complaint that mentioned budgetary concerns and Gessner's failure to perform certain duties. As a result, the court decided that the burden then shifted to Gessner to "prove" that these reasons were not a pretext for discrimination. Finally, the court dismissed the case because Gessner did not meet his burden of proof. In this regard, the court

noted that Gessner "failed to prove that the reasons offered by Defendant for termination are false."

{¶ 7} In *Coryell v. Bank One Trust Co.*, 101 Ohio St.3d 175, 2004-Ohio-723, 803 N.E.2d 781, the Ohio Supreme Court held that "[a] plaintiff may plead a prima facie case of age discrimination by pleading a 'short and plain statement of the claim showing that the party is entitled to relief.'" Id. at paragraph three of the syllabus, quoting Civ.R. 8(A)(1). The court explained in the text of *Coryell*:

{¶ 8} "As to the requisite pleading standard to establish an age discrimination case, we adopt the Supreme Court's holding in *Swierkiewicz v. Sorema, N.A.* (2002), 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1. In *Swierkiewicz,* the Supreme Court held that because *McDonnell Douglas* [*Corp. v. Green* (1973), 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668] set forth an evidentiary standard rather than a pleading standard, a prima facie case of age discrimination may be established by pleading ' "a short and plain statement of the claim showing that the pleader is entitled to relief." ' Id., quoting Fed. R. Civ. Proc. 8(a)(2). Ohio's Civ. R. 8(A)(1) mirrors the federal rules virtually verbatim. Accordingly, we hold that a plaintiff may plead a prima facie case of age discrimination by pleading 'a short and plain statement of the claim showing that the party is entitled to relief.' " 101 Ohio St.3d 175, 2004-Ohio-723, 803 N.E.2d 781, at ¶ 25.

{¶ 9} The elements of a prima facie case, absent direct evidence of age discrimination, are that the plaintiff-employee "(1) was a member of the statutorily protected class, (2) was discharged, (3) was qualified for the position, and (4) was replaced by, or the discharge permitted the retention of, a person of substantially younger age." 101 Ohio St.3d 175, 2004-Ohio-723, 803 N.E.2d 781, at paragraph one of the syllabus.

{¶ 10} As the trial court noted, Gessner's complaint does plead facts sufficient to establish the elements of a prima facie case of age discrimination. Specifically, Gessner sets forth factual allegations relating to his employment and contends (1) that he was a member of the protected class, (2) that he was qualified for and effectively performed his position with the police department, (3) that he was unlawfully terminated or constructively discharged, and (4) that he was replaced by a male who was less than 40 years of age.

{¶ 11} Union contends, however, that the case was properly dismissed because Gessner voluntarily resigned from his position, as he had been planning to do for several years. But the allegations in the complaint do not indicate a voluntary retirement. Moreover, this is simply one factor to be considered in evaluating whether Gessner was, in fact, constructively discharged. Cases are to be tried after discovery, and on the merits, not by pleadings. As the United States Supreme Court observed, "the prima facie case should not be transposed

into a rigid pleading standard for discrimination cases." *Swierkiewicz*, 534 U.S. 506, 507, 122 S.Ct. 992, 152 L.Ed.2d 1. In *Swierkiewicz*, the court also stressed the following:

{¶ 12} "This simplified notice pleading standard [in Fed.Civ.R. 8(a)(2) ] relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims. * * * 'The provisions for discovery are so flexible and the provisions for pretrial procedure and summary judgment so effective, that attempted surprise in federal practice is aborted very easily, synthetic issues detected, and the gravamen of the dispute brought frankly into the open for the inspection of the court.' 5 C. Wright & A. Miller, Federal Practice and Procedure § 1202, p. 76 (2d Ed.1990)." Id. at 512–513, 122 S.Ct. 992, 152 L.Ed.2d 1.

{¶ 13} Similar observations can be made about the Ohio Rules of Civil Procedure, which also have flexible and effective procedures for resolving cases. Moreover, discrimination claims are not precluded simply because employees choose to leave employment instead of being fired. The test for deciding whether an employee was constructively discharged is "whether the employer's actions made working conditions so intolerable that a reasonable person under the circumstances would have felt compelled to resign." *Mauzy v. Kelly Services, Inc.* (1996), 75 Ohio St.3d 578, 664 N.E.2d 1272, paragraph four of the syllabus. In this context, the Ohio Supreme Court noted:

{¶ 14} "In applying this test, courts seek to determine whether the cumulative effect of the employer's actions would make a reasonable person believe that termination was imminent. They recognize that there is no sound reason to compel an employee to struggle with the inevitable simply to attain the 'discharge' label. No single factor is determinative. Instead, a myriad of factors are considered, including reductions in sales territory, poor performance evaluations, criticism in front of coemployees, inquiries about retirement intentions, and expressions of a preference for employees outside the protected group. Nor does the inquiry change solely because an option to transfer is thrown into the mix, lateral though it may be. A transfer accompanied by measurable compensation at a comparable level does not necessarily preclude a finding of constructive discharge. Our review is not so narrowly circumscribed by the quality and attributes of the transfer option itself. A sophisticated discriminating employer should not be permitted to circumvent the statute by transferring an older employee to a sham position as a prelude to discharge." Id. at 589, 664 N.E.2d 1272.

{¶ 15} In the present case, the trial court found that Gessner had alleged a prima facie case of constructive discharge. We agree. In particular, the complaint alleges that the city manager badgered Gessner on numerous occasions

about retirement, criticized Gessner in front of others, and gave Gessner a poor performance evaluation as a prelude to terminating his employment, even though Gessner was performing his job effectively. We have no idea of the merits of these allegations, but they do raise a prima facie case of constructive discharge.

{¶ 16} Accordingly, the trial court did err in dismissing the complaint, and the single assignment of error is sustained.

## II

{¶ 17} As an alternate basis for reversal, Gessner contends that the trial court failed to address his claim for wrongful discharge in violation of public policy. Union makes three responses to this point: (1) that allegations of wrongful discharge merely duplicate the age-discrimination claim, (2) that R.C. 4112.99 provides a sufficient remedy, and (3) that insofar as this claim has a basis separate from age discrimination, i.e., Gessner's report of criminal conduct on the part of city personnel, Gessner failed to comply with the requirements of Ohio's Whistleblower Statute.

{¶ 18} Because this case is being reversed and remanded, we need not address the merits of this point in detail. However, we do note that *Livingston v. Hillside Rehab. Hosp.* (1997), 79 Ohio St.3d 249, 680 N.E.2d 1220, has been interpreted as allowing public-policy claims for wrongful discharge based on age discrimination. See, *e.g.*, *Jones v. Goodyear Tire & Rubber Co.*, Summit App. No. 21724, 2004-Ohio-2821, 2004 WL 1197209, at ¶ 22; *Ferraro v. B.F. Goodrich Co.*, 149 Ohio App.3d 301, 316–317, 2002-Ohio-4398, 777 N.E.2d 282; *White v. Honda of Am. Mfg., Inc.* (S.D.Ohio 2002), 191 F.Supp.2d 933, 954; and *Ziegler v. IBP Hog Market, Inc.* (C.A.6, 2001), 249 F.3d 509, 519, fn. 10. *Livingston* was based on the prior decision in *Kulch v. Structural Fibers, Inc.* (1997), 78 Ohio St.3d 134, 677 N.E.2d 308, which allowed a plaintiff to seek recovery for wrongful discharge because the statute in question (R.C. 4113.52, also known as the Whistleblower Statute) did not fully compensate aggrieved employees. 78 Ohio St.3d at 155, 677 N.E.2d 308.

{¶ 19} After *Livingston*, the Ohio Supreme Court held that the lack of complete remedies in the Family and Medical Leave Act did not give rise to a public-policy cause of action for wrongful discharge. *Wiles v. Medina Auto Parts*, 96 Ohio St.3d 240, 247, 2002-Ohio-3994, 773 N.E.2d 526, at ¶ 20–21 (plurality opinion) (distinguishing and narrowing *Kulch*). We subsequently applied this logic in *Barlowe v. AAAA Internatl. Driving School, Inc.*, Montgomery App. No. 19794, 2003-Ohio-5748, 2003 WL 22429543. Specifically, we found in *Barlowe* that the remedies in R.C. 4112.99 are sufficiently broad to vindicate the policy goals of R.C. Chapter 4112. Id. at ¶ 39. As a result, we refused to allow a

separate claim for wrongful discharge in violation of the public policy against handicap discrimination. Id.

{¶ 20} Both *Barlowe* and *Wiles* may be distinguished from the present case because they did not involve age-discrimination claims. Furthermore, although the Ohio Supreme Court appears to have changed direction since the decisions in *Kulch* and *Livingston, Wiles* was a plurality decision. Consequently, some courts have expressed difficulty in deciding the current state of Ohio law. See, *e.g., Mercurio v. Honeywell,* No. C–1–02–275 (S.D.Ohio, March 5, 2003), 2003 WL 966287, * 3. We agree that the law is not clear. At some point, the Ohio Supreme Court may clarify its decisions, and that will put an end to the matter. A distinction may also exist between age-discrimination cases brought under R.C. 4112.02(N) and R.C. 4112.99 (which provide a right of jury trial) and those brought under R.C. 4112.14 (which does not include such a right). Id.

{¶ 21} As a final matter, we note that the present case is not based solely on the public policy in the age-discrimination statute. Instead, the complaint also raises issues relating to Ohio's Whistleblower Statute. The Ohio Supreme Court has allowed claims for wrongful discharge to be brought where two or more separate and independent sources of public policy exist. Compare *Kulch,* 78 Ohio St.3d 134, 154, 677 N.E.2d 308, and *Collins v. Rizkana* (1995), 73 Ohio St.3d 65, 73, 652 N.E.2d 653. Given the current state of the pleadings, we cannot tell whether Gessner has met the requirements for bringing a whistleblower claim. Accordingly, we decline to rule on this point, other than to say that based on the current state of the law and what we can tell from the pleadings, Gessner appears to have the ability to bring an action for wrongful discharge in violation of public policy. Again, we express no view on the merits of that claim.

### III

{¶ 22} The final point to be considered is the issue of immunity under R.C. Chapter 2744. As we noted earlier, the trial court overruled the motion for judgment on the pleadings to the extent that it was based on Union's assertion of immunity under R.C. 2744.01(A). In this regard, the court found that immunity was revoked by R.C. 2744.09 because Gessner was a city employee. Union claims that this is incorrect.

{¶ 23} Before addressing Union's arguments, we should mention that Gessner has filed a motion with our court, asking us to strike the part of Union's brief that deals with immunity. The motion to strike is based on the fact that Union failed to file a cross-appeal. Union contends, however, that a cross-appeal is not required where an argument is advanced solely to prevent reversal. We agree with Union.

{¶ 24} In this regard, App.R. 3(C)(2) provides:

{¶ 25} "A person who intends to defend a judgment or order appealed by an appellant on a ground other than that relied on by the trial court but who does not seek to change the judgment or order is not required to file a notice of cross appeal."

{¶ 26} By raising immunity, Union is not attempting to modify the judgment, but is simply trying to prevent reversal. As a result, Union did not have to file a notice of cross-appeal. See, *e.g.*, *Whitt v. Bennett* (1992), 82 Ohio App.3d 792, 798, 613 N.E.2d 667. The motion to strike is, therefore, overruled.

{¶ 27} We turn now to the merits of Union's immunity argument. Political subdivisions have general immunity under R.C. 2744.02(A)(1) for governmental and proprietary functions, with certain exceptions that are listed in R.C. 2744.02(B). However, R.C. 2744.09 also states:

{¶ 28} "This chapter [2744] does not apply to, and shall not be construed to apply to, the following:

{¶ 29} " * * *

{¶ 30} "(B) Civil actions by an employee, or the collective bargaining representative of an employee, against his political subdivision relative to any matter that arises out of the employment relationship between the employee and the political subdivision * * *."

{¶ 31} Discharge is clearly a matter that stems from an employment relationship. Consequently, because R.C. 2744.09 allows suit against political subdivisions for matters arising out of an employment relationship, actions for wrongful discharge would be permitted. The case law on this issue is sparse, but that is not surprising in view of such an obvious point.

{¶ 32} In 1995, the Ohio Supreme Court noted that immunity from liability under R.C. 2744.03(A)(1) for quasi-judicial actions would not prevent suit against a city director for discrimination charges, because of R.C. 2744.09(B) and (C). *Whitehall ex rel. Wolfe v. Ohio Civ. Rights Comm.* (1995), 74 Ohio St.3d 120, 123, 656 N.E.2d 684. Although the court was addressing the issue of whether the Ohio Civil Rights Commission had jurisdiction to proceed with a complaint, the only conclusion that can be drawn from the case is that suit against a city is permitted. Specifically, if immunity had prevented a lawsuit, the Ohio Supreme Court would simply have granted the writ of mandamus that the city requested. Furthermore, in a 1997 case, the Eighth District Court of Appeals noted:

{¶ 33} "[D]uring oral argument, the Cleveland Board withdrew its position that Brewer could not sue it under R.C. Chapter 2744. The Cleveland Board acknowledges that R.C. 2744.09 denies it immunity when federal and state civil

51

rights claims are made." *Brewer v. Cleveland Bd. of Edn.* (1997), 122 Ohio App.3d 378, 383, 701 N.E.2d 1023, citing *Wohl v. Cleveland Bd. of Edn.* (N.D.Ohio 1990), 741 F.Supp. 688.

{¶ 34} In a case based on claims of reverse discrimination, the Eighth District Court of Appeals observed that the action brought by the plaintiff alleged "claims for relief based on R.C. Chapter 4112, claims which arise out of the employment situation between Carney [the plaintiff] and her employer. To the extent that these claims by Carney can be regarded as tortious, R.C. Chapter 2744 does not apply to them by virtue of the specific exemption for 'civil actions by an employee, * * * against his political subdivision relative to any matter that arises out of the employment relationship between the employee and the political subdivision.' R.C. 2744.09(B)." *Carney v. Cleveland Hts.–Univ. Hts. City School Dist.* (2001), 143 Ohio App.3d 415, 424, 758 N.E.2d 234.

{¶ 35} Although wrongful discharge appears to be precisely the type of situation contemplated by R.C. 2744.09, Union claims that age discrimination is an intentional tort that does not arise from the employment relationship. However, none of the authority Union cites, including the supplemental authority submitted shortly before oral argument, is pertinent.

{¶ 36} For example, Union cites *Stanley v. Miamisburg* (Jan. 28, 2000), Montgomery App. No. 17912, 2000 WL 84645. In *Stanley*, a former police officer sued the city of Miamisburg on various grounds, including defamation, intentional and negligent infliction of emotional distress, a whistleblower claim, discrimination based on a disability, and assault and battery. The officer also claimed retaliatory discharge in that the city forced him to take a medical retirement. We rejected the wrongful-discharge claims based on judicial estoppel, because the officer had previously represented in two prior proceedings that his disability prevented him from performing the duties of a police officer. 2000 WL 84645, at * 5. Notably, we did not dismiss the wrongful-discharge claim on the basis of immunity.

{¶ 37} We also considered the intentional-tort claim against the city. In this regard, we noted that the Ohio Supreme Court had "conclusively held that employer intentional torts do not arise out of the employment relationship." 2000 WL 84645, at * 7. We further commented:

{¶ 38} "When an employer intentionally harms his employee, that act effects a complete breach of the employment relationship, and for purposes of the legal remedy for such an injury, the two parties are not employer and employee, but intentional tortfeasor and victim. If the victim brings an intentional tort suit against the tortfeasor, it is a tort action like any other." Id. at ** 7–8, citing *Brady v. Safety–Kleen Corp.* (1991), 61 Ohio St.3d 624, 634, 576 N.E.2d 722.

{¶ 39} Because such a tort does not arise out of the employment relationship, we found that R.C. 2744.09(B) did not prevent the application of R.C. Chapter 2744 immunity. Thus, we held that the trial court had properly granted summary judgment on the intentional-tort claims against the city. Id. at * 8.

{¶ 40} We did not specify the facts constituting the core of the "employer intentional tort." However, the wrongful-discharge claims were clearly not encompassed, since we had already affirmed the summary judgment on that point. Moreover, the complaint raised matters that could certainly be labeled intentional torts, like the allegation that the police chief struck the plaintiff with a door. Id. at * 2.

{¶ 41} Similarly, in *Schmitz v. Xenia Bd. of Edn.*, Greene App. No. 2002–CA–69, 2003-Ohio-213, 2003 WL 139970, a wife brought a cause of action for "employer intentional tort," based on a fatal injury her husband sustained when he fell from a personnel lift while working as a school custodian. Id. at ¶ 5. In classic intentional-tort fashion, the complaint alleged that the board of education knew of a dangerous condition within its business operation and also knew that harm to the decedent would be substantially certain if he continued to be exposed to the harm. We found that this claim did not come within the exception to municipal immunity in R.C. 2744.09(B). Specifically, we noted:

{¶ 42} "In short, Schmitz [the plaintiff] cannot have it both ways. She cannot assert that her late husband's injury arose out of his employment relationship with the Board, for purposes of claiming the exception to municipal immunity, while simultaneously claiming that the injury did not arise out of his employment, so as to avoid workers' compensation immunity." Id. at ¶ 20.

{¶ 43} As we noted, our decision in *Stanley* cited *Brady v. Safety–Kleen Corp.* (1991), 61 Ohio St.3d 624, 634, 576 N.E.2d 722. The First District Court of Appeals has discussed the concept of employer intentional tort in the *Brady* context. The First District's discussion also included many of the cases that Union has cited. It stated:

{¶ 44} "The rationale of these decisions derives from the Ohio Supreme Court's interpretation of the separate workers' compensation statutory scheme. In *Brady,* the court held that the General Assembly could not, consistent with the workers' compensation provision of Section 35, Article II, Ohio Constitution, enact legislation governing employer intentional torts that occur within the employment relationship, because employer intentional conduct 'will always take place outside' the employment relationship." *Engleman v. Cincinnati Bd. of Edn.* (June 22, 2001), Hamilton App. No. C–000597, 2001 WL 705575, * 5, citing *Brady* at 634, 576 N.E.2d 722.

{¶ 45} The Seventh District Court of Appeals has also explained that intentional torts are outside the employment relationship:

{¶ 46} "The rule that an intentional tort cannot arise out of the employment relationship originated with *Blankenship v. Cincinnati Milacron Chemicals, Inc.* (1982), 69 Ohio St.2d 608 [23 O.O.3d 504, 433 N.E.2d 572]. The issue before *Blankenship* was whether an intentional tort could arise out of the employment relationship for the purposes of workers' compensation litigation. When interpreting the statute the court paid special attention to the rule of construction written into the chapter covering workers' compensation, namely the workers' compensation chapter 'will be liberally construed in favor of employees and the dependents of deceased employees.' R.C. 4123.95. The court found '[n]o reasonable individual would equate intentional and unintentional conduct in terms of the degree of risk which faces an employee nor would such individual contemplate the risk of an intentional tort as a natural risk of employment.' *Id.* at 613 [23 O.O.3d 504, 433 N.E.2d 572]. Therefore, it held that *by its nature* an intentional tort cannot arise out of the employment relationship and suits based on intentional tort claims would not be barred by workers' compensation legislation." (Emphasis sic.) *Fabian v. Steubenville* (Sept. 28, 2001), Jefferson App. No. 00JE33, 2001 WL 1199061, * 3.

{¶ 47} The cases cited by Union do not classify age-discrimination or other employment-discrimination claims as "employer intentional torts." In addition, we have not found any Ohio cases that preclude the application of the immunity exception in R.C. 2744.09(B) where state civil rights violations occur in the employment context. In fact, suit appears to be routinely permitted against political subdivisions in such situations. See, *e.g., Fisher v. Lorain,* Lorain App. No. 02CA00832, 2003-Ohio-526, 2003 WL 245708, at ¶ 1 and 21 (affirming jury verdict against city in action for age discrimination in hiring process); *Edwards v. Dubruiel,* Greene App. No. 2002 CA 50, 2002-Ohio-7093, 2002 WL 31846259, at ¶ 33 (city employee brought suit against city based on sexual harassment. Summary judgment for city affirmed because employee failed to establish prima facie case); *Hale v. Dayton,* Montgomery App. No. 18800, 2002-Ohio-542, 2002 WL 191588, * 2 (city employee brought action against city alleging hostile work environment due to sexual harassment in violation of R.C. 4112.02, defamation, and invasion of privacy. Summary judgment for city affirmed because employee failed to present sufficient facts to survive summary judgment on objective prong of analysis, i.e., that harassing conduct was severe enough that reasonable person would have found work environment abusive); *Clark v. Dublin* (Mar. 28, 2002), Franklin App. No. 01AP–458, 2002 WL 465013 (age- and sex-discrimination case brought by employee against city. Summary judgment for city affirmed because employee had previously elected administrative remedy rather than judicial

action); *Seale v. Springfield* (1996), 113 Ohio App.3d 384, 680 N.E.2d 1286 (wrongful-discharge action brought by former city employee against city based on alleged religious discrimination. Summary judgment for city affirmed because plaintiff failed to establish prima facie case); *Nealon v. Cleveland* (2000), 140 Ohio App.3d 101, 110, 746 N.E.2d 694 (religious-discrimination action brought by prospective employee against Cleveland); and *Williams v. Akron*, Summit App. No. 21306, 2003-Ohio-7197, 2003 WL 23095251, at ¶ 30 (reversing jury verdict in favor of terminated police officer because officer failed to establish prima facie case of racial discrimination concerning city's decision to terminate his employment). In short, we find no support in Ohio law for Union's position.

{¶ 48} · Union's final point in this context is that political subdivisions are entitled to qualified immunity from civil actions under R.C. 4112.99 because that section of the Ohio Revised Code does not expressly impose liability as required by R.C. 2744.02(B)(5). As support for this point, Union relies on *Howard v. Beavercreek* (C.A.6, 2002), 276 F.3d 802, which held that R.C. 4112.99 does not expressly impose liability on political subdivisions for purposes of triggering the immunity exception in R.C. 2744.02(B)(5). We need not discuss this point in detail. Rather than engage in another lengthy discussion of the obvious, we simply note that resort to the immunity exception in R.C. 2744.02(B)(5) is not required in the present case.

{¶ 49} As we mentioned, R.C. Chapter 2744 provides general immunity from liability to political subdivisions. Absent such immunity, a political subdivision would be liable in tort, just like any other entity. In certain employment situations, like those governed by R.C. 2744.09(B), R.C. Chapter 2744 "does not apply," and the general grant of immunity ceases to exist. Accordingly, in those situations, the court does not have to consider whether an immunity exception in R.C. 2744.02(B) can be used to subject the political subdivision to suit.

{¶ 50} Based on the preceding discussion, the alternate grounds urged by Union for affirming the trial court decision are rejected. Because the single assignment of error has been sustained, this case is reversed and remanded for further proceedings. In addition, Gessner's motion to strike is overruled.

Judgment reversed
and cause remanded.

Young, J., concurs.

Grady, J., concurs in part.

Grady, J., concurring in part.

{¶ 51} R.C. 2744.09(B) creates an exception to the immunities conferred on political subdivisions by R.C. 2744.03 for "[c]ivil actions by an employee * * *

against his political subdivision relative to any matter that arises out of the employment relationship between the employee and the political subdivision."

{¶ 52} R.C. 4112.14(A) provides:

{¶ 53} "No employer shall discriminate in any job opening against any applicant or discharge without just cause any employee aged forty or older who is physically able to perform the duties and otherwise meets the established requirements of the job and laws pertaining to the relationship between employer and employee."

{¶ 54} R.C. 4112.14(B) authorizes a civil action brought by "[a]ny person aged forty and over who is * * * discharged without just cause by an employer in violation of division (A) of this section." Daniel Gessner's action against the city of Union alleging constructive discharge is such an action.

{¶ 55} The city of Union argues that it is immune per R.C. 2744.03 from Gessner's claim for relief, the R.C. 2744.09(B) exception notwithstanding, because Gessner's constructive-discharge claim is one for an intentional tort, which the Supreme Court has held cannot arise within the employment relationship, and necessarily exists outside it. *Blankenship v. Cincinnati Milacron Chemicals, Inc.* (1982), 69 Ohio St.2d 608, 23 O.O.3d 504, 433 N.E.2d 572. Therefore, the argument goes, Gessner's claim cannot be on a claim that concerns a "matter that arises out of the employment relationship," to which the R.C. 2744.09(B) exception to immunity expressly applies.

{¶ 56} *Blankenship* involved a question arising under the Workers' Compensation laws of Ohio promulgated in R.C. Chapter 4123. The General Assembly is authorized by Article II, Section 35, of the Ohio Constitution to enact legislation compensating "workmen and their dependents for death, injury, and occupational disease." The same section further provides that the compensation scheme enacted "shall be in lieu of all other rights to compensation, or damages" for such losses, and that employers who participate in it "shall not be liable to respond in damages at common law for such death, injuries, or occupational disease." That immunity is likewise provided by statute, R.C. 4123.35, which was at issue in *Blankenship.*

{¶ 57} A claim for age discrimination brought pursuant to R.C 4112.14(B) is plainly not an action for death, injury, or occupational disease. Therefore, the constitutional and statutory immunity from liability relative to claims that are covered by workers' compensation is distinct from an R.C. 4112.14(A) age-discrimination claim.

{¶ 58} More to the point, the particular distinction that *Blankenship* made with respect to intentional torts applied not to statutory claims for relief, such as R.C. 4112.14 claims, but to claims for which an employer could otherwise be held liable

at common law. See 94 Ohio Jurisprudence 3d, Workers' Compensation (1999), Section 2. The distinction made between intentional torts and negligent acts or omissions is therefore limited to common-law tort claims, and has no application to statutory claims for relief.

{¶ 59} The city of Union argues that the intentional-tort distinction extends to an R.C. 4112.14(B) action on an age-discrimination claim, nevertheless, because the Supreme Court has said that in order to maintain the claim the employee must present evidence showing that the employer was motivated by a "discriminatory intent." *Mauzy v. Kelly Services, Inc.* (1996), 75 Ohio St.3d 578, 664 N.E.2d 1272. That point relates to the probative quality of the evidence the employee must offer when he relies on direct evidence. *Byrnes v. LCI Communication Holdings Co.* (1996), 77 Ohio St.3d 125, 672 N.E.2d 145. It has no bearing on the sufficiency of the evidence necessary to establish a prima facie case of age discrimination under the tripartite test of *McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668. And, in either alternative, the requirement imposed does not convert an R.C. 4112.14 age-discrimination claim into a common-law intentional-tort claim.

{¶ 60} R.C. 2744.09(B) can apply only to claims for relief in actions brought by their employees against political subdivisions. To hold that the General Assembly, having enacted R.C. Chapter 4123, is therefore barred by the immunity provisions of Article II, Section 35, from enacting the R.C. 2744.09(B) exception with respect to a wholly different kind of claim confuses apples with oranges and wholly misapprehends the separate authority on which the General Assembly relied in each instance to enact the laws concerned. I would reject the immunity claim for those reasons.