OPINION
{¶ 1} Plaintiff-appellant, Kevin Fitch, appeals the Butler County Court of Common Pleas decision granting summary judgment in favor of defendants-appellees, U.S. Foodservice Corp. ("U.S. Food"), Patrick Ariss, and Thomas Ludwig (collectively "appellees").
 {¶ 2} Fitch began working as an order selector for U.S. Food at its Cleveland facility in June 2002. He transferred to the Las Vegas facility and then to the Fairfield, Ohio facility. Fitch was employed at the Fairfield facility from January 25, 2004, until he was terminated on *Page 2 
March 14, 2004.
 {¶ 3} At the Fairfield facility, Fitch worked on third shift as an order selector. His responsibilities included picking grocery items from their warehouse location and taking them to the loading dock. There, he would stack the items on a pallet and wrap them in cling film. Ariss, the night warehouse manager, was Fitch's immediate supervisor. Ludwig, the Vice-President of Operations, managed the entire facility.
 {¶ 4} U.S. Food terminated Fitch on March 14, 2004, for attendance and performance issues. The Vice-President of Human Resources, Christa Bishop, and Ludwig made the decision to terminate him. Fitch, even as a transfer employee, was subject to a 90-calendar day probation period. Upon his transfer, Fitch acknowledged that as a probationary employee, he was subject to discharge at the complete discretion of U.S. Food "at any time, with or without cause, without notice and without further written recourse [sic]."
 {¶ 5} During his probation period, Fitch missed eight days of work: four days in February to relocate his family from Las Vegas to Ohio and four days in March due to illness. Fitch presented a physician's note excusing him from one of his March absences. As a transfer employee, Fitch was entitled to 40 hours of paid sick leave and 32 hours of paid personal leave. Therefore, according to Fitch, he was entitled to the time off. U.S. Food paid Fitch for seven of the eight days he missed, but ultimately found Fitch's attendance during his probation period unacceptable.
 {¶ 6} U.S. Food also found Fitch's job performance unacceptable, as it fell outside the company's expected error margin. U.S. Food determines the accuracy of its order selectors by using a mispick ratio. According to U.S. Food, the company's production standard is .3 mispicks for each 1,000 cases picked. Fitch's ratio was .52 mispicks per 1,000 cases picked.
 {¶ 7} On February 7, 2004, Fitch, who is African-American, observed a Caucasian employee making monkey or ape-like gestures and noises toward him, to the amusement of *Page 3 
another Caucasian employee. The following day, Fitch reported the incident to Ariss and a night supervisor, Nate Williams.[1] Ariss told Fitch that he would "take care" of the situation. According to Fitch, he asked about the status of the investigation every time he saw Ariss over the next couple of months. Ariss always replied that it was ongoing. Fitch alleges that U.S. Food did nothing about his complaint and chose to retaliate against him for making the complaint by terminating him on exaggerated charges of poor performance and attendance.
 {¶ 8} On July 25, 2005, Fitch filed a complaint against U.S. Food, Ludwig, and Ariss alleging (1) that management had retaliated against him for making a complaint of racial harassment, and (2) that management had terminated his employment in violation of public policy. On September 5, 2006, appellees filed a joint motion for summary judgment. The trial court granted appellees' motion for summary judgment, from which Fitch timely appeals asserting the following assignment of error:
 {¶ 9} Fitch's Assignment of Error No. 1:
 {¶ 10} "THE TRIAL COURT ERRED IN GRANTING THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT."
 {¶ 11} This court conducts a de novo review of a trial court's decision on summary judgment. Burgess v. Tackas (1998),125 Ohio App.3d 294, 296. A court may grant summary judgment only when: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence submitted that reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, who is entitled to have the evidence construed most strongly in his favor. Civ.R. 56(C);Welco Indus., Inc. v. Applied Cos., 67 Ohio St.3d 344, 346,1993-Ohio-191. *Page 4 
 {¶ 12} Fitch presents two arguments in support of his sole assignment of error. In his first argument, Fitch contends that U.S. Food terminated him in retaliation for reporting the incident of racial harassment. An employer may not retaliate against an employee who has opposed an unlawful discriminatory practice or who has made a charge under R.C. 4112.01 through 4112.07. Peterson v. Buckeye SteelCasings (1999), 133 Ohio App.3d 715. To establish a prima facie case of retaliation, Fitch must prove that (1) he engaged in a protected activity, (2) his employer was aware that he had engaged in that activity, (3) his employer took an adverse employment action against him, and (4) there is a causal connection between the protected activity and adverse action. Greer-Burger v.Temesi, Slip Opinion No.2007-Ohio-6442, citing Canitia v. Yellow Freight Sys., Inc. (C.A.6, 1990), 903 F.2d 1064, 1066.
 {¶ 13} Fitch presented evidence to satisfy the first and third elements of a prima facie retaliation case: he reported an incident of racial harassment and he was later fired. He failed to establish, however, that those involved in making the decision to fire him knew of the incident, the second element of a prima facie case. Fitch testified in his deposition that he reported the incident regarding racial gestures by a fellow employee to his immediate supervisor, Ariss and another night supervisor, Williams. He testified that they both told him that they would take care of it. Fitch acknowledged that he never witnessed another incident of harassment during his employment there. Fitch also testified that he did not report the incident to either Ludwig or Bishop prior to his discharge. Bishop, in her deposition, stated that she only learned of the incident in a phone conversation with Fitch after she and Ludwig made the decision to terminate him. Ludwig, in his sworn affidavit, stated that he had no knowledge of Fitch's complaint regarding the racially harassing incident and did not learn of it until U.S. Food received a charge from the Ohio Civil Rights Commission.
 {¶ 14} Bishop also testified that Ariss had no involvement in making the decision to terminate Fitch, other than providing them with information regarding Fitch's absenteeism and *Page 5 
productivity. Ludwig, in his sworn affidavit, also stated that he and Bishop were the only people involved in making the decision to terminate Fitch.
 {¶ 15} Fitch urges this court to apply the federal "meaningfully involved" standard and find that because he reported the incident to Ariss, and Ariss provided data regarding Fitch's attendance and performance to Bishop and Ludwig, Ariss, an intermediate supervisor, was "meaningfully involved" in Fitch's termination, and his knowledge of the incident and alleged animus toward Fitch should be attributed to the employer.
 {¶ 16} The Sixth Circuit adopted the "meaningfully involved" standard for determining when the remarks of an intermediate supervisor constitute direct evidence of discrimination under Title VII. The cases upon which Fitch relies for support, however, all involve discriminatory comments made by a mid-level manager, not situations where an employee reports a discriminatory comment made by a fellow employee to a mid-level manager. In those federal cases, "when faced with evidence of alleged discriminatory remarks by an intermediate level supervisor," the courts determined "whether that supervisor is, or was, `meaningfully involved' in the termination decision." Williams v. United DairyFarmers (S.D.Ohio 1998), 20 F.Supp.2d 1193, 1201, quoting Wells v. NewCherokee Corp. (C.A.6, 1995), 58 F.3d 233.
 {¶ 17} Fitch has provided no evidence to suggest that Ariss or any other mid-level manager made discriminatory comments toward him. Furthermore, he failed to present evidence that Ariss was "meaningfully involved" in making the decision to fire him. Therefore, we find that the "meaningfully involved" standard is inapplicable to this case.
 {¶ 18} Finally, Fitch has failed to show a causal connection between the protected activity and his termination, the fourth element of a prima facie retaliation case. Neither Bishop nor Ludwig, the two higher-level managers involved in making the decision to fire Fitch, were aware, at the time they made the decision to terminate him, that Fitch had ever *Page 6 
reported a racially harassing incident to Ariss. Therefore, the trial court correctly found that Fitch has failed to produce sufficient evidence from which the court could draw an inference that the adverse action would not have been taken had Fitch not reported the racially harassing incident to Ariss. The trial court found that Fitch failed to meet his burden of establishing a prima facie case of retaliatory discrimination. Specifically, the court found that Fitch could not establish that those persons involved in making the decision to fire Fitch were aware of the alleged protected activity. The court also found that Fitch failed to show that there was a causal connection between the protected activity and the adverse employment decision.
 {¶ 19} Because the evidence supports the trial court's finding that Fitch has failed to show that his employer knew of the incident and that there was a causal connection between the protected activity and the adverse action, the trial court was correct in ruling that he has failed to establish a prima facie case of retaliatory discrimination.
 {¶ 20} In his second argument, Fitch contends that the trial court erred in granting summary judgment on his second claim that U.S. Food terminated him in violation of Ohio public policy. "Public policy warrants an exception to the employment-at-will doctrine when an employee is discharged or disciplined for a reason which is prohibited by statute." Greeley v. Miami Valley Maint. Contr., Inc. (1990),49 Ohio St.3d 228. In order to prove such a claim, a plaintiff must show (1) a clear public policy that is manifested in a state or federal constitution, state or administrative regulation, or in the common law (the clarity element); (2) that a dismissal of the employee jeopardized the clearly established public policy (the jeopardy element); (3) the plaintiff's dismissal was motivated by conduct related to the public policy (the causation element); and (4) the employer lacked overriding legitimate business justification for the dismissal (the overridingjustification element). Collins v. Rizkana, 73 Ohio St.3d 65, 69-70,1995-Ohio-135. *Page 7 
 {¶ 21} In addressing the jeopardy element, the Ohio Supreme Court held that "there is no need to recognize a common-law action for wrongful discharge if there already exists a statutory remedy that adequately protects society's interests." Wiles v. Medina Auto Parts,96 Ohio St.3d 240, 2002-Ohio-3994. In Wiles, the Ohio Supreme Court found that a plaintiff had no separate claim for the tort of wrongful discharge in violation of public policy when the tort was based solely on a claimed violation of the FMLA. Since then, courts have interpreted that holding differently when determining whether R.C. 4112.02 and R.C. 4112.99
provide a statutory remedy that adequately protects society's interests. Some Ohio appellate courts have interpreted Wiles to mean that a plaintiff cannot assert a claim of wrongful discharge in violation of public policy when the tort claim is based solely on a violation of R.C.4112.02. Berge v. Columbus Community Cable Access (1999),136 Ohio App.3d 281; Barlowe v. AAAA International Driving School, Inc., Montgomery App. No. 19794, 2003-Ohio-5748. Other courts, however, have held otherwise. See Butka v. J.C. Penney Co. (N.D.Ohio 2004),359 F.Supp.2d 649 (finding that even though the ADA and R.C. 4112.02 provide remedies for damages, injunctive and other appropriate relief, the court will recognize a common law action for wrongful discharge in violation of public policy under Ohio law based solely on violations of the ADA and R.C. 4112.02); Gessner v. Union, 159 Ohio App.3d 43, 2004-Ohio-5770
(finding a public policy tort for wrongful discharge existed where plaintiff based the claim on violations of R.C. 4112.02 for age discrimination and R.C. 4112.14, the whistle blower statute).
 {¶ 22} We need not determine whether R.C. 4112.02 and R.C. 4112.99
provide a statutory remedy that adequately protects society's interests, because Fitch's common law public policy claim fails as a matter of law. Based on the evidence presented above, Fitch has failed to raise any issue of material fact to prove his dismissal was motivated by conduct related to the public policy, the causation element; and therefore, his second argument is without merit. *Page 8 
 {¶ 23} For the foregoing reasons, appellant's sole assignment of error is overruled.
 {¶ 24} Judgment affirmed.
YOUNG, P.J., and POWELL, J., concur.
[1] We note that appellant refers to the night supervisor as Nate Williams, but appellees refer to the same person as Nate Goforth. *Page 1