SPIRES, APPELLEE, *v.* CITY OF LANCASTER, APPELLANT, ET AL.

[Cite as Spires *v.* Lancaster  (1986), 28 Ohio St. 3d 76.]

(No. 86-113—Decided December 24, 1986.)

*Bradley & Farris Co., L.P.A., Philip R. Bradley* and *Richard D. Topper,* for appellee.

*Reid, Johnson, Downes, Andrachik & Webster* and *Timothy T. Reid,* for appellant.

Douglas, J. The single issue to be decided by this court is whether punitive damages may be awarded against a municipality absent specific statutory authority permitting such an award. For the following reasons, we answer this question in the negative.

In *Ranells, supra,* this court held in the syllabus:

"In the absence of a statute specifically authorizing such recovery, punitive damages can not be assessed against a municipal corporation."

The *Ranells* court held that while "Ohio law is well established that a municipal corporation * * * acting in a governmental capacity is immune from liability for tortious conduct," "* * * when acting in a proprietary capacity, a municipal corporation may * * * be held liable * * * in the same manner as would a private corporation or individual." *Id.* at 4. However, this court went on to say that while it is appropriate to award compensatory damages for a municipality's tortious conduct, punitive damages are not appropriate against a municipality even where there is evidence of wanton misconduct. In *Ranells,* we reasoned, as have a number of our sister state courts, that permitting punitive damages against a municipal corporation contravenes public policy. See, *e.g., Fisher* v. *Miami* (Fla. App. 1954), 160 So. 2d 57, affirmed (1965), 172 So. 2d 455; *Chappell* v. *Springfield* (Mo. 1968), 423 S.W. 2d 810.[2]

Appellee argues, however, that the subsequent decisions of this court in *Haverlack* and *Enghauser* have abolished the immunity carved out by this court in *Ranells.* In *Haverlack, supra,* at 30, this court abolished the judicially created governmental-proprietary distinction formerly applicable to municipalities by holding:

"* * * A municipal corporation, unless immune by statute, is liable for its negligence in the performance or nonperformance of [all] its acts."

We reasoned in *Haverlack* at 30 that:

"* * * The municipality should be run with the same care and circumspection as a business, protecting itself in the same manner from liability incurred by its servants. A municipality is able to obtain liability insurance and is able to spread the cost among the taxpayers."

In *Enghauser,* while this court recognized the need to provide tort immunity for municipalities with respect to "those * * * acts which go to the essence of governing," nevertheless in paragraph two of the syllabus we held in part:

"* * * However, once the decision has been made to engage in a certain activity or function, municipalities will be held liable, *the same as private corporations and persons,* for the negligence of their employees and agents in the performance of the activities." (Emphasis added.)

---

[2] In *Fisher, supra,* at 59, the Third District Court of Appeals of Florida held:

"* * * [T]o permit such [punitive] damages against a public corporation is to contravene public policy since the parties who must bear the burden of the punishment are the taxpayers and citizens who constitute the very persons who as a group are to benefit from the public example which the granting of such damages is supposed to make of a wrongdoer."

Similarly, in *Chappell, supra,* at 814, the Supreme Court of Missouri reasoned:

"The theory that punitive damages serve as a deterrent to others adds little justification for the award against a municipality. It is assumed that public officials will do their duty, and if discipline of a wrongdoing municipal employee is indicated, appropriate measures are available through the electorate, or by superior officials responsible to the electorate, without recourse to punitive awards through the courts."

In the case *sub judice,* the court of appeals reasoned, as does appellee herein, that the language emphasized above is to be interpreted to mean that where punitive damages would lie in a tort action against a private corporation or person, such damages would be appropriate in a similar action involving a municipality. We find reliance on these cases misplaced. Neither *Haverlack* nor *Enghauser* decided the punitive damages issue raised by this case. Rather, for several reasons, we hold that our decision in *Ranells* continues to prohibit the assessment of punitive damages against municipalities.

First, it is noteworthy that the same public policy reasons which supported this court's decision in *Ranells* underlie the holding of the United States Supreme Court that punitive damages are not assessable against municipalities in tort actions brought pursuant to Section 1983, Title 42, U.S. Code. That is, even in light of the serious nature of the harms present in cases involving a violation of constitutional rights, the Supreme Court maintains that since "[a] municipality * * * can have no malice independent of the malice of its officials * * * [d]amages awarded for *punitive* purposes * * * are not sensibly assessed against the governmental entity itself." (Emphasis *sic.*) *Newport* v. *Fact Concerns, Inc.* (1981), 453 U.S. 247, 267. See, also, *Edmonds* v. *Dillion* (N.D. Ohio 1980), 485 F. Supp. 722, 729-730. In addition, we find that the public policy reasons articulated in *Ranells* maintain their vitality and relevance today.

Second, in 1978, this court decided *Drain* v. *Kosydar* (1978), 54 Ohio St. 2d 49 [8 O.O.3d 65]. In *Drain,* despite the provisions of R.C. 2743.02 (A) wherein the state "consents to be sued, and have its liability determined, in the court of claims * * * in accordance with the same rules of law applicable to suits between private parties * * *," this court held at 56:

"It is undeniable that the state can only act through its employees and officers. While the state has consented to be sued for the misconduct of its agents, it would appear that the General Assembly never intended that the state be held liable for other than compensatory damages. Where it is alleged that the acts of a state employee were motivated by actual malice, or were acts which exhibited a willful or wanton disregard for the health, safety and welfare of the general public, the usual prerequisites for assessment of exemplary damages * * *, such conduct would certainly be outside the scope of state employment, and liability therefor will not be imputed to the state. Recently-enacted amendments to the Court of Claims Act serve to confirm our impressions of legislative intent in this regard."

While it is clear that the *Drain* decision was supported by existing statutory law, it is significant that in *Drain* this court also relied upon the public policy rationale articulated in *Ranells* when ruling that punitive damages should not be awarded against the state.[3]

---

[3] In *Drain* at 55-56 this court stated:

"By filing a cross-appeal appellees contest the Court of Appeals' ruling that punitive damages should not be awarded against the state. In so deciding, the Court of Appeals

Finally, although not in effect at the time of the trial of the case at bar, the subsequent enactment of R.C. 2744.05(A) is evidence that the Ohio Legislature would not have authorized the provision of punitive awards against municipalities notwithstanding the judicial abrogation of municipal sovereign immunity.[4]

Accordingly, and for the foregoing reasons, we reverse the judgment of the appellate court upholding the trial court's award of punitive damages against the appellant, city of Lancaster.

A review of the record and the brief filed by the appellant and the individual police officers in the court of appeals reveals that they raised the issue of the relationship between the trial court's charge on punitive damages and the respective liability of the individual and city defendants. In light of our decision today and the record before the court of appeals, the matter of whether punitive damages could be assessed against the individual defendant police officers should be decided by the court of appeals. We therefore remand this case to the court of appeals for further consideration of the appropriateness of an award of punitive damages against the individual defendant police officers.

*Judgment reversed
and cause remanded.*

CELEBREZZE, C.J., LOCHER, HOLMES and WRIGHT, JJ., concur.

SWEENEY and C. BROWN, JJ., dissent.

CLIFFORD F. BROWN, J., dissenting. Two Lancaster police officers,

---

extended this court's decision in *Ranells* v. *Cleveland* * * * wherein it was held that in the absence of a statute specifically authorizing such recovery punitive damages could not be assessed against a municipal corporation.

" 'The reason generally advanced as the basis for denying the recovery of punitive damages against a municipal corporation or other political subdivision is that to permit such damages would be to contravene public policy, since the parties who must bear the burden of the punishment are the taxpayers and citizens who constitute the very persons who as a group are to benefit from the public example which the granting of such damages is supposed to make of a wrongdoer.' * * *

"We believe the foregoing rationale applies with equal force in any instance where punitive or exemplary damages are sought to be assessed against the 'state,' which term is defined in R.C. 2743.01(A) to include, without limitation, the departments, boards, offices, commissions, agencies, institutions or other instrumentalities of the state of Ohio."

[4] R.C. 2744.05(A), as enacted, reads in part:

"Notwithstanding any other provisions of the Revised Code or rules of a court to the contrary, in an action against a political subdivision to recover damages for injury, death, or loss to persons or property caused by an act or omission in connection with a governmental or proprietary function:

"(A) Punitive or exemplary damages shall not be awarded."

after first blocking John Spires' automobile both in the front and in the rear, had bank officials order him to move his car. This simultaneously perfected a criminal trespass charge and also prevented Spires from moving his automobile. The two healthy officers must surely have found Spires, a five-foot two-inch, one hundred twenty-five pound diabetic with ailing kidneys and in insulin shock, a challenging adversary, as they felt compelled to drag him through his car's open window to place him under arrest, at which time, during the handcuffing, his arm was broken. He was further charged with resisting arrest. Although subsequently informed that Spires' insulin shock prevented him from responding to the officers at the scene, the officers insisted on pressing charges, as did the city of Lancaster, until those charges were dismissed on the day set for trial.

In instructing the jury subsequent to the trial of Spires' claims against the city and officers for malicious prosecution, false imprisonment, and for breaking his arm, the trial court explicitly stated that under the applicable standard the city could be subject to punitive damages on the malicious prosecution count. Counsel for Lancaster stated that his clients were "satisfied" with the jury instructions. Thus, no objection was made.

Civ. R. 51(A) states in pertinent part:

"A party may not assign as error the giving or the failure to give any instruction unless he objects thereto *before the jury retires to consider its verdict* * * *." (Emphasis added.)

The city of Lancaster clearly had the opportunity to object to the jury instructions. Not only did the city fail to object, but it explicitly approved of the jury instructions. Generally, such failure to object waives the right to claim error under Civ. R. 51(A). *Schade* v. *Carnegie Body Co.* (1982), 70 Ohio St. 2d 207 [24 O.O.3d 316].

An exception to the Civ. R. 51(A) mandate has been enunciated by this court in *Schade, supra.* Although *Schade* appeared to adopt the "plain error" exception for civil suits, such a ruling was improper as the record clearly showed that a timely objection had been made. *Id.* at 212 (Clifford F. Brown, J., dissenting). Likewise, in *Reichert* v. *Ingersoll* (1985), 18 Ohio St. 3d 220, 222, counsel timely objected to the relevant charge to the jury. The problem in *Reichert* was that the record did not disclose the objection. We held in *Reichert* that the court of appeals failed to apply App. R. 9(E) to determine what properly should have been in the record. The plain error exception is not applicable to the case here. Therefore, the court of appeals decision should be affirmed.

Even if this action is determined on the merits, however, the defendant city should still not prevail. The antiquated and judicially adopted doctrine of sovereign immunity was abrogated by this court in *Haverlack* v. *Portage Homes, Inc.* (1982), 2 Ohio St. 3d 26. Subsequent to our decision in *Haverlack,* we clearly stated that under Ohio law as announced in our previous decisions, *the defense of sovereign immunity is not available to a municipal corporation. Adams* v. *Peoples* (1985), 18 Ohio St. 3d 140;

*Longfellow* v. *Newark* (1985), 18 Ohio St. 3d 144. The majority analysis conspicuously ignores the mandate of *Adams*. Likewise, the majority completely ignores the syllabus in *Strohofer* v. *Cincinnati* (1983), 6 Ohio St. 3d 118, which reads, "[i]n the absence of a statute providing immunity, the defense of sovereign immunity is not available to a municipal corporation in an action for damages alleged to be caused by the tortious conduct of the municipality." The law in Ohio is clearly in direct opposition to the decision the majority makes today, and I refuse to concur with it.

Furthermore, the legislature enacted R.C. 2744.05(A) on November 20, 1985.[5] As amended, R.C. 2744.05(A) statutorily imposes sovereign immunity in certain enumerated circumstances. The General Assembly's enactment of R.C. 2744.05(A), contrary to the claims of the majority, clearly illustrates the General Assembly's realization that the doctrine of sovereign immunity was not available as a defense for any municipal corporation. See, *e.g., Strohofer, supra.* Because the General Assembly recognized that sovereign immunity was appropriate in certain circumstances, it enacted R.C. 2744.05(A). Thus, sovereign immunity is available as a defense to municipal corporations *only* to the extent a statute specifically authorizes its use.

Finally, I take issue with the propriety of the majority's remand of this action to the court of appeals for a determination "of the appropriateness of an award of punitive damages against the individual defendant police officers."

By the majority's own admission, the sole issue appealed to this court is the issue of the propriety of assessing punitive damages against a municipal corporation, already well-settled law in Ohio. That is the only issue before this court. The parties were all provided with the opportunity to appeal any portion of the court of appeals' decision which was adverse to them. With the exception of the single issue appealed to this court, all of the parties have accepted the remaining portion of the judgment of the court of appeals, and that remaining portion of the judgment may not properly be questioned. Yet, the majority sees fit to order the court of appeals to readdress a portion of its judgment in this case concerning which no proper legal question remains.

Therefore, I respectfully dissent.

SWEENEY, J., concurs in the foregoing dissenting opinion.

---

[5] See fn. 4, *supra.*