OPINION *Page 2 
{¶ 1} Defendants the Jackson Township Board of Trustees and Chief Harley Neftzer, and separately, defendant Bruce Wilson, appeal a judgment of the Court of Common Pleas of Stark County, Ohio, entered on a jury verdict in favor of plaintiff-appellee Pamela Denczak Henderhan. Appellants The Board and Neftzer assign seven errors to the trial court:
 {¶ 2} "I.THE TRIAL COURT COMMITTED PLAIN ERROR WHEN IT PRESENTED A VERDICT FORM TO THE JURY THAT WAS INCONSISTENT WITH THE PROVIDED JURY INSTRUCTIONS.
 {¶ 3} "II. THE TRIAL COURT ERRED IN NOT PERMITTING THE JURY TO CORRECT ITS FINDING OF PUNITIVE DAMAGES AGAINST JACKSON TOWNSHIP.
 {¶ 4} "III. THE TRIAL COURT ERRED IN DENYING APPELLANTS' MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT.
 {¶ 5} "IV.THE JURY'S AWARD OF PUNITIVE DAMAGES WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 6} "V. THE JURY'S VERDICT FINDING RETALIATION AGAINST THE JACKSON TOWNSHIP BOARD OF TRUSTEES AND CHIEF NEFTZER WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 7} "VI. THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY FAILING TO INSTRUCT THE JURY ON THE PROMPT REMEDIAL ACTION AFFIRMATIVE DEFENSE.
 {¶ 8} "VII. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT GRANTED APPELLEE UNREASONABLE ATTORNEY FEES." *Page 3 
 {¶ 9} Appellant Bruce Wilson assigns two errors to the trial court:
 {¶ 10} "I. THE TRIAL COURT ERRED BY NOT GRANTING DEFENDANT-APPELLANT BRUCE WILSON'S MOTION FOR SUMMARY JUDGMENT ON APPELLEE'S RETALIATION CLAIM.
 {¶ 11} "II. THE TRIAL COURT ERRED BY NOT GRANTING DEFENDANT-APPELLANT BRUCE WILSON'S MOTION FOR DIRECTED VERDICT ON APPELLEE'S RETALIATION CLAIM."
 {¶ 12} Appellee filed a complaint against all appellants alleging gender-based discrimination, hostile work environment, and retaliation. The jury found in appellee's favor only on the retaliation claim and awarded:
 {¶ 13} From Chief Neftzer: damages only for pain and suffering of $21,250.00.
 {¶ 14} From Lieutenant Wilson: damages only for pain and suffering of $42,500.
 {¶ 15} From the Jackson Township Board of Trustees: lost pay and benefits in the amount of $15,000.00; pain and suffering of $21,250.00; and punitive damages of $100,000. The court later reduced the punitive damages to $72,500.
 {¶ 16} The jury also found attorney fees should be granted only against the Board. The court awarded $176,577.50 attorney fees and $26,857.49 in costs.
 {¶ 17} Appellee began work for the Jackson Police Department in 1983. She worked in various capacities, including three years with the Stark County Metropolitan Narcotics Unit, and transferred to the detective bureau in 1998. In 1998 and 1999, appellee worked as a detective specializing in narcotics investigations. She was the only female detective, and one of only three full-time female police officers. *Page 4 
 {¶ 18} In July 2002, the Board hired Neftzer as police chief. On August 1, 2005, Neftzer assigned Lieutenant Wilson as appellee's supervisor in the detective bureau. On the first day he supervised her, Wilson placed his arm around her and kissed the top of her head, stating he loved her. Appellee testified she did not feel Wilson meant anything of a sexual nature, but she was offended and thought it was "creepy." Subsequently, appellee and Wilson had several conflicts regarding investigations, culminating in a bitter altercation on October 1. On October 4, 2005, appellee filed a complaint for sex discrimination against both Wilson and Neftzer. The same day, she took medical leave until January 19, 2006. The Board referred the matter to an independent investigation team.
 {¶ 19} When appellee returned to work on January 19, 2006, she found Lieutenant Wilson had removed from her office the filing cabinet, all of the files including information on closed cases, drug investigation money, a drug log book and confidential informant file cards. Lieutenant Wilson had also taken the vehicle assigned to appellee. Appellee requested that Wilson return these items, but he did not return them. Wilson issued appellee a vehicle which she alleges was not in good repair.
 {¶ 20} On January 20, 2006, appellee filed a second complaint of sex discrimination and retaliation against Wilson. Representatives of the Board directed Neftzer to investigate the complaint over his objection he could have a conflict of interest.
 {¶ 21} In February, 2006 the Board's counsel reviewed the report from the independent investigation, and concluded the first complaint was unfounded. *Page 5 
 {¶ 22} Appellee alleged after she returned from sick leave, and after she had filed the retaliation claim, Wilson excluded her from every significant investigation in the detective bureau, and she got less overtime than the other detectives. Although she had the most experience in drug investigation, the cases involving drugs were assigned to detectives with less training and experience.
 {¶ 23} Appellee alleged Wilson had made threatening and derogatory statements about her, and made derogatory comments to other women and females in general. In February, 2006, Neftzer released appellee's photograph to the Massillon Independent Newspaper in response to a public records request. Appellee alleged the department ordinarily would not release such pictures, and in doing so destroyed her ability to work undercover and put her life in danger. Appellee testified she was forced to seek medical attention and take medication as a result of these actions.
 {¶ 24} On August 1, 2006, Lieutenant Glenn Goe replaced Wilson as appellee's direct supervisor. Goe returned the files to her, gave her a different vehicle, and told her she would be doing drug investigations. Appellee alleged even after Wilson was no longer her supervisor, he continued to make her uncomfortable.
 {¶ 25} Appellee's allegations against the Board involved failure to properly train its employees with respect to EEO issues, and not formulating a sexual harassment policy until 2004. Appellee alleged the outside persons the Board hired to investigate her first claim were not competent, and the Board assigned Neftzer to investigate the second complaint even though the first complaint had been lodged against him and was still pending. *Page 6 
 {¶ 26} The court's verdict forms provided the jury with the option of assessing damages for lost pay and benefits, pain and suffering, punitive damages, and attorney fees. The jury only awarded punitive damages and attorney fees against the Board.
 {¶ 27} We will address the assignments of error of the Board and Chief Neftzer first.
 II III {¶ 28} Appellants' second and third assignments of error relate to the jury's award of punitive damages against Jackson Township. The second assignment of error addresses the court's ruling after the jury returned its verdict. While the jury was still impaneled, the Board objected and requested the court send the case back to the jury with an instruction it could not award punitive damages against a political subdivision.
 {¶ 29} The third assignment of error argues the court should have granted judgment notwithstanding the verdict for the above reason. JNOV is proper if upon viewing the evidence in a light most favorable to the non-moving party and presuming any doubt to favor the nonmoving party, reasonable minds could come to but one conclusion, that being in favor of the moving party. Civ. R. 50(B); Goodyear Tire Rubber Co. v. AetnaCasualty Surety Co., 95 Ohio St.3d 512, 2002-Ohio-2842 . In ruling on a motion for judgment notwithstanding the verdict, the court does not determine factual issues, but only questions of law, even though it is necessary to review and consider the evidence in deciding the motion.Goodyear at paragraph 4.
 {¶ 30} R.C. Chapter 2744 governs the tort liability of political subdivisions, their immunities and exceptions to immunity. R.C. 2744.09
states: "This chapter does not apply to, and shall not be construed toapply to, the following: *Page 7 
 {¶ 31} "(A) Civil actions that seek to recover damages from a political subdivision or any of its employees for contractual liability;
 {¶ 32} "(B) Civil actions by an employee, or the collective bargaining representative of an employee, against his political subdivision relative to any matter that arises out of the employment relationship between the employee and the political subdivision;
 {¶ 33} "(C) Civil actions by an employee of a political subdivision against the political subdivision relative to wages, hours, conditions, or other terms of his employment; * * * (Emphasis added).
 {¶ 34} R.C. 2744.05 states:
 {¶ 35} "Notwithstanding any other provisions of the Revised Code or rules of a court to the contrary, in an action against a political subdivision to recover damages for injury, death, or loss to person or property caused by an act or omission in connection with a governmental or proprietary function:
 {¶ 36} "(A) Punitive or exemplary damages shall not be awarded."
 {¶ 37} The Board urges us to apply R.C. 2744.05, and to find punitive damages may not be assessed against it. Appellee asserts R.C. 2744.09
prohibits application of R.C. 2744.05 to this action, and therefore the Board may be liable for punitive damages.
 {¶ 38} In Gessner v. Union, 159 Ohio App.3d 43, 2004-Ohio-5770,823 N.E.2d 1, the Second District held that age-discrimination and wrongful-discharge claims arose out of the employment relationship, despite the defendant's claim that age discrimination is an intentional tort. In reaching its decision, the court noted, "[t]he case law on this issue is sparse, but that is not surprising in view of such an obvious point." *Page 8 
Id. at ¶ 31. Gessner further observed that no other Ohio cases precluded applying R.C. 2744.09(B) when civil rights violations occur in the employment context. "In fact, suit appears to be routinely permitted against political subdivisions in such situations." Id. at ¶ 47. See, also, Nagel v. Horner, 162 Ohio App.3d 221, 227, 833 N.E.2d 300, 305,2005-Ohio-3574 at ¶ 17-18. In addition, the Supreme Court of Ohio summarily stated that immunity is not available to a political subdivision in an employee's claim for unlawful discrimination. The court cited R.C. 2744.09(B) and (C). Whitehall ex rel. Wolfe v. OhioCiv. Rights Comm. (1995), 74 Ohio St.3d 120, 123, 656 N.E.2d 684. Accordingly, R.C. Chapter 2744 does not apply to appellee's causes of action because they are causally connected to her employment. Therefore, R.C. 2744.05 can not be applied to prevent the imposition of punitive damages. However, that does not imply that punitive damages can be awarded against a political subdivision for a violation of R.C. 4112.99.
 {¶ 39} In general, R.C. 4112.99 authorizes an award of punitive damages upon a showing of actual malice. Rice v. CertainTeed Corp
(1999), 84 Ohio St.3d 417, 422, 704 N.E.2d 1217. However, punitive or exemplary damages may not be awarded against a political subdivision unless such damages are specifically authorized by statute. See Spiresv. City of Lancaster (1986), 28 Ohio St.3d 76, syllabus, 502 N.E.2d 614;Ranells v. Cleveland (1975), 41 Ohio St.2d 1, 6-8, 321 N.E.2d 855;Franklin v. City of Columbus(1998), 130 Ohio App.3d 53, 63,719 N.E.2d 592. Since there is no language in R.C. 4112.02 and 4112.99 expressly authorizing an award of punitive damages against a political subdivision, appellee may not recover punitive damages against the *Page 9 
Board. See, Fernandez v. City of Pataskala (SD OH 2006), No. 2:05-CV-75, Slip Op. at *3, 2006 WL 3257389.
 {¶ 40} Additionally, in Cramer v. Auglaize Acres, 113 Ohio St. 3d 266,2007-Ohio-1946, 865 N.E.2d 9, the Ohio Supreme Court reviewed a case wherein a resident of a county home was injured. Cramer brought suit against the County Board of Commissioners, the county home, and several employees of the home, claiming negligence, intentional infliction of emotional distress, and violations of Ohio's Patient's Bill of Rights contained in R.C. 3721.10 et seq. The statute provides express liability for violations in county operated nursing homes. The county home and the county commissioners argued they were immune from liability. The Supreme Court found, "R.C. 372.17(I) (2) (a) allows a resident to recover punitive damages for a violation, and R.C. 2744.05(A) prohibits the award of punitive damages against a political subdivision. A conflict over the recovery of punitive damages does not prevent the application of R.C. 3721.17(I) (1) to the county appellees. Although punitive damages may not be awarded against a political subdivision, we hold that R.C. 3721.17 expressly imposes liability on county-operated nursing homes for violations of R.C. 3721.10 through 3721.17. Thus Cramer's cause of action against the county appellees under the Patients' Bill of Rights falls under the exception to immunity found in R.C. 2744.02(B)(5)." Cramer at ¶ 31. See, also, Lewis v. Minerva (ND OH 1996), 934 F.Supp. 268. [Although municipalities may be directly liable for monetary, declaratory, and injunctive relief under § 1983, such liability does not extend to liability for punitive damages]. *Page 10 
 {¶ 41} We find Cramer stands for the proposition a political subdivision's immunity may be expressly abrogated by a specific statute, making the subdivision liable for compensatory damages, but punitive damages, even if allowed by the statute, are not recoverable against the political subdivision.
 {¶ 42} Appellee argues Cramer is distinguishable from the case at bar because it does not deal with an employment issue and does not discuss how R.C. 2744.09 affects the analysis. Nevertheless, Cramer is instructive on the question of political subdivision liability and immunity.
 {¶ 43} Appellee argues the Board and Neftzer may have invited the error by not objecting to the verdict form that allowed the jury to award punitive damages against the Board. She argues if the jury had not been given the option of awarding punitive damages from the Board, then the jury would have assessed punitive damages against Neftzer and Wilson. We do not agree. The jury could have awarded punitive damages from Neftzer and Wilson in addition to the Board under the existing jury instructions; the jury chose not to do so.
 {¶ 44} Appellee further argues the Board's failure to object to the verdict form waived any error on appeal. We disagree.
 {¶ 45} In the case at bar, the Board immediately notified the trial court of the error before the jury was dismissed. Further, in relation to the Board's motion for judgment notwithstanding the verdict, the Board and the appellee were given the opportunity to brief this issue by the trial court. Accordingly, we may reach the merits of this error on appeal. Newport v. Facts Concerts, Inc. (1981), 453 U.S. 247, 255-256,101 S.Ct. 2748, 2753-2754. *Page 11 
 {¶ 46} In summary, since there is no language in R.C. 4112.02 and4112.99 expressly authorizing an award of punitive damages against a political subdivision, appellee may not recover punitive damages against the Board. Further, considerations of history and policy do not support exposing a political subdivision to punitive damages for the bad-faith actions of its officials. Newport v. Facts Concerts, Inc., supra; Spiresv. City of Lancaster, supra.
 {¶ 47} The second and third assignments of error are sustained.
 I. {¶ 48} The first assignment of error challenges the court's determination the verdict form submitted to the jury was inconsistent with the jury instructions. No one objected to the verdict forms and the Board asks us to find plain error.
 {¶ 49} The court instructed the jury, inter alia, that if it found appellee was entitled to recover damages on her claims, then it must consider whether she is entitled to recover punitive damages against the "individual defendants." Appellants argue the phrase "individual defendants" refers to Neftzer and Wilson, but not the Board. Appellee argues the meaning of "individual defendants" meant the jury was to determine each of the three defendant's liability individually, i.e. separately. We agree the jury instruction was somewhat ambiguous, and the verdict form led the jury to misunderstand its instruction.
 {¶ 50} Generally, we are disinclined to invoke plain error, as the doctrine of plain error in civil matters is limited to exceptionally rare cases in which the error, not objected to at the trial court, "rises to the level of challenging the legitimacy of the underlying judicial process itself." See Goldfuss v. Davidson, 79 Ohio St.3d 116,122, 1997-Ohio-401, *Page 12 679 N.E.2d 1099. In light of our disposition of Appellants' second and third assignments of error, while the inconsistency between the instruction and the verdict form created error, it does not rise to the level of plain error.
 {¶ 51} The first assignment of error is overruled.
 IV. {¶ 52} The Board and Chief Neftzer urge the jury's award of punitive damages was against the manifest weight of the evidence. Given our holding, supra, we find this assignment of error is moot.
 V. {¶ 53} In their fifth assignment of error, the Board and Chief Neftzer argue the jury's verdict finding of retaliation was against the manifest weight of the evidence.
 {¶ 54} A reviewing court will not disturb the trial court's decision as against the manifest weight of the evidence if the decision is supported by some competent, credible evidence. C.E. Morris Co. v. FoleyConstruction Co. (1978), 54 Ohio St.2d 279. The Supreme Court has repeatedly held the term "abuse of discretion" implies the court's attitude is unreasonable, arbitrary, or unconscionable, Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 450 N.E.2d 1140. We may not substitute our judgment for that of the trier of fact. Pons v. OhioState Med. Bd. (1993), 66 Ohio St.3d 619, 621, 614 N.E.2d 748.
 {¶ 55} In order to establish a claim of retaliation, appellee had to prove: (1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) there was a causal connection between the adverse employment action and the protected activity.Greer-Burger v. Temesi, 116 Ohio St.3d 324, 2007-Ohio-6442, *Page 13 879 N.E.2d 174, at paragraph 13, citing Canitia v. Yellow Freight Systems.,Inc. (C.A. 6, 1990), 903 F.2d 1064, 1066.
 {¶ 56} If a complainant establishes a prima facie case, the burden then shifts to the employer to articulate some legitimate, nondiscriminatory reason for its actions. McDonnell Douglas Corp. v.Green (1973), 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668. If the employer does so, the burden shifts back to the complainant to demonstrate the proffered reason was not the true reason for the employment decision. Texas Dept. of Community Affairs v. Burdine (1981),450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207. Greer-Burger
at paragraph 14.
 {¶ 57} In Burlington Northern Santa Fe Railway v. White (2006),548 U.S. 53, 126 S.Ct. 2405, 165 L.Ed.2d 345, the Court explained the anti-retaliation provision of Title VII of the Civil Rights Act of 1964 prohibits actions that would be materially adverse to a reasonable employee, and requires a plaintiff to show the employer's action would dissuade a reasonable worker from making or supporting the charge of discrimination. The significance of any given act of the employer depends upon the surrounding circumstances, and re-assignment of job duties is not automatically actionable. However, "a reassignment of duties can constitute retaliatory discrimination where both the former and present duties fall within the same job description. Almost every job category involves some duties that are less desirable than others." Id.
 {¶ 58} The Township and Chief Neftzer apparently concede appellee's filing of the discrimination claims was a protected activity. They argue appellee did not suffer an adverse employment action and there was no causal connection between any change in her work conditions and the filing of the two complaints. *Page 14 
 {¶ 59} Appellee argues she presented evidence the Board and Neftzer permitted Wilson to remove from her office the file cabinet, files, and drug investigation materials, and allowed him to substitute her vehicle with an older one. These articles were removed while appellee was on sick leave, but Wilson refused to return them when she returned to her duties. Appellee argues she was excluded from virtually every significant investigation, and was not given the opportunity to earn overtime pay. Appellee presented evidence the Board and Chief Neftzer knew Wilson made threats and derogatory statements, but did not intervene. Appellee presented evidence the Board's representatives ordered Chief Neftzer to investigate appellee's second complaint involving retaliation, over his objection that her first complaint against him was still pending.
 {¶ 60} In sum, appellee urges she presented evidence, which, if believed by the jury, would show the appellants' actions were done with an intent to retaliate, and had an adverse effect on her both emotionally, and economically.
 {¶ 61} In Vojvodich v. Lopez (1995), 48 F.3d 879, the Fifth Circuit Court of Appeals considered a discrimination claim brought by a sheriff's deputy who was removed from his position as the head of a narcotics unit and transferred to a position as the head of the Communications/Dispatch Division. The officer alleged he was discriminated against because of his political affiliation, which was different than that of the newly elected sheriff. He said his new position offered less job satisfaction, fewer benefits, and that, in his view, the transfer was a career setback. The sheriff maintained the transfer was made for nondiscriminatory reasons and argued the new position was equal in prestige to the position the officer held before the transfer. *Page 15 
 {¶ 62} The Fifth Circuit found a transfer to a less interesting and less prestigious position can be an adverse employment action even if the employee suffers no loss in pay.
 {¶ 63} Appellee asserts a jury could infer a causal connection between her filing of her two discrimination claims and the adverse action because of the timing between her filing of the claims and the acts she alleged were retaliatory. Clark County School District v. Breeden (2001)532 U.S. 268, 121 S.Ct. 1508. A plaintiff cannot prevail if it appears from the evidence the employer would have made the same decision regardless of the plaintiff's participation in some protected activity,Neal v. Hamilton County (1993), 87 Ohio App.3d 670, 622 N.E.2d 1130.
 {¶ 64} The Board and Neftzer do not specifically assign error to the jury's award of lost wages, but only include it in their argument there was no retaliation.
 {¶ 65} The Board and Neftzer's explanation for appellee's apparent denial of overtime was a sufficient legitimate business excuse and transferred the burden of proof back to appellee to show this explanation was not accurate, and the real motivation was retaliation. They presented evidence that for the year 2006, overtime pay for three other detectives ranged from 8%, 10%, and 20% of their total pay, while appellee's overtime was 8.5% of her salary. No party offered evidence as to prior years. Appellee estimated she was denied overtime of $5,000 or $6,000.
 {¶ 66} On cross, appellee admitted in 2006, she worked 1,300 hours compared to 1,700 or more by her colleagues. The Board and Neftzer cross-examined appellee about taking 336 hours of sick leave and 332 hours of vacation, and argued appellee could not earn overtime if she was not working her regular hours. However, appellee *Page 16 
testified although she could not be called into work when on sick leave, she could, and was, called in when she was on vacation. Appellee also testified overtime was paid if an employee worked more than forty hours in a week, or more than eight hours on a given day. Thus, the jury could reject the calculations offered by the Board and Neftzer.
 {¶ 67} Nevertheless, it is not sufficient for the employer to demonstrate it had authority to take the action complained of; an employer may abuse its power or misuse its authority. The plaintiff must demonstrate the employer's motive was retaliatory by showing employer's decision or the cumulative effect of several employment decisions was intended to punish the employee for making the charge of discrimination, or to dissuade the employee from making or supporting the charge.
 {¶ 68} Appellee also presented evidence of improper and/or objectionable behavior unrelated to any employment decisions. We find she presented sufficient evidence of pretext to support the jury's conclusion the appellants engaged in retaliation against her.
 {¶ 69} We find that there was sufficient, competent and credible evidence, which, if believed by the jury, supports its verdict. The verdict is not against the manifest weight of the evidence.
 {¶ 70} The fifth assignment of error is overruled.
 VI. {¶ 71} In their sixth assignment of error, the Board and Chief Neftzer argue the court should have given the requested instruction on the defense of prompt remedial action. This is an affirmative defense from a charge of vicarious liability for hostile work environment, and requires the employer to prove by a preponderance of the evidence *Page 17 
the employer exercised reasonable care to prevent and correct the improper behavior and the employee unreasonably failed to take advantage of preventative or corrective opportunities provided by the employer.Burlington Northern Santa Fe Railway v. White, (2006), 548 U.S. 53,126 S.Ct. 2405, 165 L.Ed.2d 345; Faragher v. City of Boca Raton, (1998),524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662.
 {¶ 72} The Board and Neftzer assert they promptly and reasonably responded to appellee's complaints. The trial court refused to give an instruction on the affirmative defense to the jury, and instructed the jury the Board would be vicariously liable for its employees' actions. The Board argues in effect, the jury was instructed if it found against either of the employees, the Board was liable as a matter of law.
 {¶ 73} The Board and Neftzer presented evidence from which the jury could have concluded appellee did not promptly report the first instances of discrimination, and their response to the complaints were appropriate. We find the court erred in not instructing the jury on the affirmative defense to the charge of hostile work environment, but the error was not prejudicial because the jury found in appellants' favor on that claim.
 {¶ 74} The sixth assignment of error is overruled.
 VII. {¶ 75} In their seventh assignment of error, the Board argues the court erred in assessing attorney fees because punitive damages were not allowed by law and the award was excessive.
 {¶ 76} An award of attorney fees may be predicated on an award of punitive damages, or when authorized by statute. We have found the court could not award punitive damages against the Board, and therefore attorney fees cannot be awarded on *Page 18 
that basis. There is no provision under R.C. Chapter 2744 that allows for recovery of attorney fees against a municipality. Krieger v.Cleveland Indians Baseball Co., 176 Ohio App.3d 410, 892 N.E.2d 461,2008-Ohio-2183, appeal allowed, 120 Ohio St.3d 1415, 897 N.E.2d 651,2008-Ohio-6166 (Ohio Dec 03, 2008), In the absence of such a provision, attorney fees may not be awarded against a municipality.Krieger at paragraph 72, citing Banks v. Oakwood (Oct. 11, 1990), Cuyahoga App. Nos. 57225 and 58020, 1990 WL 151662; Franklin v.Columbus (1998), 130 Ohio App.3d 53, 719 N.E.2d 592."
 {¶ 77} We find the court erred in awarding attorney fees from the Board. The seventh assignment of error is sustained.
 {¶ 78} Next, we address appellant Bruce Wilson's assignments of error.
 I II {¶ 79} In his first assignment of error, appellant Wilson urges the trial court erred in overruling his motion for summary judgment on the retaliation claim. In his second assignment of error, Wilson argues the court should have granted a directed verdict in his favor on the retaliation claim. We will address both together because the standards for summary judgment and directed verdict are similar.
 {¶ 80} Civ. R. 56 states in pertinent part:
 {¶ 81} "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as *Page 19 
stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages."
 {¶ 82} A trial court should not enter a summary judgment if it appears a material fact is genuinely disputed, nor if, construing the allegations most favorably towards the non-moving party, reasonable minds could draw different conclusions from the undisputed facts,Houndshell v. American States Insurance Company (1981),67 Ohio St. 2d 427. The court may not resolve ambiguities in the evidence presented,Inland Refuse Transfer Company v. Browning-Ferris Industries of Ohio,Inc. (1984), 15 Ohio St. 3d 321. A fact is material if it affects the outcome of the case under the applicable substantive law, Russell v.Interim Personnel, Inc. (1999), 135 Ohio App. 3d 301.
 {¶ 83} When reviewing a trial court's decision to grant summary judgment, an appellate court applies the same standard used by the trial court, Smiddy v. The Wedding Party, Inc. (1987), 30 Ohio St. 3d 35. This means we review the matter de novo, Doe v. Shaffer, 90 Ohio St.3d 388,2000-Ohio-186.
 {¶ 84} The party moving for summary judgment bears the initial burden of informing the trial court of the basis of the motion and identifying the portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the non-moving party's claim,Drescher v. Burt (1996), 75 Ohio St. 3d 280. Once the *Page 20 
moving party meets its initial burden, the burden shifts to the non-moving party to set forth specific facts demonstrating a genuine issue of material fact does exist, Id. The non-moving party may not rest upon the allegations and denials in the pleadings, but instead must submit some evidentiary material showing a genuine dispute over material facts, Henkle v. Henkle (1991), 75 Ohio App. 3d 732.
 {¶ 85} Civ. R. 50 states in pertinent part:
 {¶ 86} "When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."
 {¶ 87} A motion for directed verdict presents a question of law, not fact, even though we review and consider the evidence. O'Day v.Webb (1972), 29 Ohio St.2d 215, 280 N.E.2d 896, syllabus 3 by the court. Thus, we review a motion for directed verdict using the de novo standard of review. Cleveland Electric Illuminating Company v. Public UtilityCommission, 76 Ohio St.3d 521 at 523, 1996-Ohio-298, 668 N.E.2d 889, citation deleted.
 {¶ 88} Appellant Wilson asserts appellee did not set forth a prima facie case of retaliation. Wilson asserts appellee proved neither an adverse employment action nor damages. Wilson argues assuming arguendo, appellee did set forth a prima facie case, the burden shifted to him to articulate a legitimate reason for the adverse action. Wilson maintains he produced evidence the adverse employment actions were legitimate *Page 21 
supervisory decisions. The burden then shifted to appellee to show the articulated reason was pre-textual, and Wilson argues appellee did not do so. He adds that the inappropriate behavior and statements appellee cited were, at most, trivial and petty slights, which do not constitute an adverse employment action, White, supra.
 {¶ 89} We find reasonable minds could find the cumulative effect of the various actions and statements constituted an adverse employment action and proximately caused appellee economic and non-pecuniary damages. We find appellee came forward with sufficient, competent and credible evidence which, if believed by a jury, showed she suffered an adverse employment action.
 {¶ 90} Wilson argues he demonstrated a legitimate non-discriminatory reason for each incident and employment action appellee cites. Much of Wilson's testimony and evidence was that any adverse employment actions were due to appellee's personality and her own behavior. We agree that if the jury believed this evidence, it could find Wilson presented legitimate non-retaliatory reasons. The burden then shifted to appellee to produce evidence Wilson's explanation was pretextual, and his motivation was actually retaliation against her for filing complaints against him.
 {¶ 91} Pretext is established by presenting evidence that the employer's articulated legitimate business reason has no basis in fact, did not actually motivate the adverse action, or was insufficient to motivate the adverse action, see Frantz v. Beechmont Pet Hospital
(1996), 117 Ohio App. 3d 351, 690 N.E. 2d 897, citations deleted.
 {¶ 92} Appellee presented the testimony of several law enforcement officers who stated she was a good investigator, and her personality had never been an issue with *Page 22 
them. We find this was sufficient to meet her burden of showing Wilson's articulated legitimate business reasons were pretextual.
 {¶ 93} We find the case presented genuine issues of fact upon which reasonable minds could come to different conclusions. Accordingly, the trial court did not err in overruling Wilson's motions for summary judgment and directed verdict, and submitting the matter to the jury for its determination.
 {¶ 94} The first and second assignments of error are both overruled.
 {¶ 95} For the foregoing reasons, the judgment of the Court of Common Pleas of Stark County, Ohio, is affirmed in part and reversed in part, and the cause is remanded to the court for further proceedings in accord with law and consistent with this opinion.
 Gwin, P.J., Hoffman, J., concur; Farmer, J., dissents. *Page 24 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Stark County, Ohio is affirmed in part and reversed in part, and remanded to that court for further proceedings in accord with law and consistent with this opinion. Costs to be split equally between Neftzer and Wilson. *Page 23